Albert CHAVEZ, Jr., Appellant
(Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 5119.

Supreme Court of Wyoming.

Dec. 28, 1979.

Rehearing Denied Jan. 14, 1980.

Tom C. Toner of Redle, Yonkee & Arney, Sheridan, for appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Richard Scott Rideout, Asst. Atty. Gen. (argued), and Berry F. Laws, III, Legal Intern, on brief, for appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

This is an appeal from the judgment rendered on a jury verdict finding appellant-defendant guilty of two counts of forgery and one count of habitual criminal. Appellant was sentenced to a prison term of five to ten years on each count of forgery and a term of ten to thirty years on the habitual criminal count, the sentences to run consecutively.

Appellant phrases his contentions of reversible error as follows:

1. "The Appellant was denied due process and effective assistance of counsel when his court appointed attorney made a deal with the State to have one of his other clients testify against his other client."

2. "There was a reasonable likelihood that the Appellant could not receive a fair trial in Sheridan County because of the jurors' awareness of newspaper reports relating to sex crimes with which Appellant had been charged shortly before trial; therefore, a change of venue should have been granted."

3. "The police officer with a three week course in document analysis taken five years ago was not an expert in handwriting analysis."

4. "Introducing authenticated copies of prior judgments bearing the same name as the Appellant is not sufficient to establish beyond a reasonable doubt that the Appellant is the person named in those judgments."

We find no error with reference to the first three of these contentions and thus affirm the judgment as it pertains to the conviction on the forgery charges. We find error in the failure to establish the necessary element of identity on the habitual criminal status and, therefore, reverse the judgment as it pertains to it and remand the case for further proceedings relative to the sentence. The facts required for our determination of the appellant's separate contentions of error will be set forth in the discussion of each contention.

## ATTORNEY REPRESENTATION

On September 6, 1978, appellant was charged with an unrelated offense, and a particular Assistant Public Defender (hereinafter referred to as "Assistant Public Defender") was appointed on that date to represent him. On the same day, Assistant Public Defender was appointed to defend a Clarence Cyra on a charge of passing forged checks. Cyra had previously, and when arrested, given a statement to the police which implicated appellant in the forgery of the checks. On September 12, 1978, appellant was charged with the two counts of forgery which ultimately led to the conviction from which this appeal is taken. On the same date, September 12, 1978, Assistant Public Defender, who was already representing appellant on the unrelated charge, was appointed to represent him on the forgery charges.

On September 21, 1978, a plea bargain was arranged between Cyra and the State, with approval of Assistant Public Defender, whereby Cyra agreed to testify against appellant in return for the dismissal of charges against him. On the next day, Assistant Public Defender requested, and was granted, removal from representation of appellant on the forgery charges.[1] The record is not clear as to just when Assistant Public Defender first learned that he had been assigned to defend appellant on the

---

1. Assistant Public Defender requested and was granted removal from representation of appellant in the unrelated case on October 2, 1978.

forgery charges, but it contains no indication that he knew of the appointment until the time that plea bargaining was approved. He testified:

" * * * I may have received notice on that day [September 12, 1978], but there is normally a day or two before I get official notice. September 14th through September 17th I was in Jackson Hole attending a continuing legal education seminar. I returned to work on the 18th and I had a trial on Arthur Chris Beane the 18th and 19th of September."

Assistant Public Defender did not contact appellant or discuss the forgery charges with him during the period of time between the appointment on September 12, 1978 and the withdrawal on September 22, 1978.

On September 26, 1978, Tom Toner, appellant's present counsel, was appointed to represent and defend him. Mr. Toner represented appellant at the preliminary hearing and at all times subsequent thereto. There is no contention or indication that the representation of appellant by Toner was not adequate or that the assistance afforded appellant by him was not effective.

At the trial and prior to the opening statements, the trial court denied appellant's motion for dismissal, which motion was grounded on a denial of effective assistance of counsel and due process of law because of the involvement of Assistant Public Defender.

The law is not harmonious among the various jurisdictions on some of the questions which arise from representation by one attorney of multiple defendants in a criminal action. Some of the divergence arises from the potential dilemma between the recognition that

" * * * Joint representation is a means of insurance against reciprocal recrimination. A common defense often gives strength against a common attack. * * * " Dissent of Chief Justice Stone and Justice Frankfurter in *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 475, 86 L.Ed. 680, reh. den. in *Kretske v. United States*, 315 U.S. 827, 62 S.Ct. 629, 86 L.Ed. 1222, and in *Roth v. United·*

*States*, 315 U.S. 827, 62 S.Ct. 637, 86 L.Ed. 1222 (1942),

and the conflict of interest which arises when the application of all of the skill and experience of the attorney to the benefit of one of the defendants represented by him will of necessity work to the detriment of the other defendant represented by him. The area of plea bargaining is one in which the conflict of interest aspect is an obvious problem.

■ Although "there is no constitutional right to plea bargain," *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977),

" * * * Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. For example, in this case it may well have precluded defense counsel for Campbell from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable. * * *

" * * * in a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. * * * " *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 1181, 1182, 55 L.Ed.2d 426 (1978).

There is no disagreement among the authorities that a defendant is entitled to effective assistance of counsel. Such is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *Powell v. State of Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Adger v. State*, Wyo., 584 P.2d 1056 (1978). Article 1, §§ 6 and 10 of the Wyoming Constitution does likewise, and the legislature has provided for appointment of counsel for indigent defendants. Sections 7–1–107, et seq. and § 7–9–105, W.S.1977. Rule 6(a), W.R.Cr.P., provides:

"(a) * * * Every defendant who is unable to obtain counsel shall be entitled

to have counsel assigned to represent him at every stage of the proceedings from his initial appearance before the commissioner or the court through appeal, unless he waives such appointment."

The United States Supreme Court has emphasized that the assistance of counsel is such a basic right that the lack of such assistance "can never be treated as harmless error" *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978) quoting from *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); and "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942).

The specific holding in *Holloway v. Arkansas*, supra, the latest case in which the Supreme Court of the United States addressed the issue of joint representation, was to the effect that a defendant is denied the fundamental right of effective assistance of counsel when the trial court *requires* joint representation of defendants over timely objections, and prejudice is then presumed and need not be independently shown, 98 S.Ct. at 1179. In its discussion of the issue, the court noted that it was not resolving the following two questions to which it referred in 98 S.Ct. at 1178:

"Since *Glasser* was decided, however, the courts have taken divergent approaches to two issues commonly raised in challenges to joint representation where—unlike this case—trial counsel did nothing to advise the trial court of the actuality or possibility of a conflict between his several clients' interests. First, appellate courts have differed on how strong a showing of conflict must be made, or how certain the reviewing court must be that the asserted conflict existed, before it

will conclude that the defendants were deprived of their right to the effective assistance of counsel. Compare *United States ex rel. Hart v. Davenport*, 478 F.2d 203 (CA3 1973); *Lollar v. United States*, 126 U.S.App.D.C. 200, 376 F.2d 243 (1967); *People v. Chacon*, 69 Cal.2d 765, 73 Cal.Rptr. 10, 447 P.2d 106 (1968); and *State v. Kennedy*, 8 Wash.App. 633, 508 P.2d 1386 (1973), with *United States v. Lovano*, 420 F.2d 769, 773 (CA2 1970); see also cases collected at Annot., 34 A.L.R.3d 470, 477–507 (1970). Second, courts have differed with respect to the scope and nature of the affirmative duty of the trial judge to assure that criminal defendants are not deprived of their right to the effective assistance of counsel by joint representation of conflicting interests. Compare *United States v. Lawriw*, 568 F.2d 98 (CA8 1977); *United States v. Carrigan*, 543 F.2d 1053 (CA2 1976); and *United States v. Foster*, 469 F.2d 1 (CA1 1972), with *Foxworth v. Wainwright*, 516 F.2d 1072 (CA5 1975), and *United States v. Williams*, 429 F.2d 158 (CA8 1970)." (Footnote omitted.) [2]

The parties here have argued the implications of the foregoing as applicable to this case. However, we find that the portal to any application thereof *is the existence of multi-defendant representation* by counsel. In the cases that concern themselves with the law which the foregoing exemplifies, the representation of two or more defendants was present, the question often being whether or not the representation was shown to be prejudicial and whether such showing was material.

■ We find that Assistant Public Defender did not represent appellant at all. Our affirmance of the ruling of the trial court on this issue is grounded on the situation existing under the specific facts of this case; and under this narrow set of facts, we

---

2. One of the two questions may be answered by the Supreme Court of the United States in its opinion to be given in *United States ex rel. Sullivan v. Cuyler*, for which it granted certiorari from the Third Circuit. See 593 F.2d 512 (1979). The Third Circuit found error in joint

representation of three defendants in separate cases by two attorneys in that there was at least a possibility of prejudice or conflict of interest, noting that independent counsel might well have chosen a different trial strategy.

find that the trial court did not abuse its discretion in concluding that appellant was never represented by Assistant Public Defender. Accordingly, the question of conflict of interest, or of ineffective assistance of counsel, or of denial of due process of law with respect to his representation, did not exist.

On September 12, 1978, Assistant Public Defender was appointed by the justice of the peace to defend and represent appellant on the forgery charges. The record does not reflect that Assistant Public Defender knew of the appointment until the time he requested removal from the appointment. It does not reflect that he knew the forgery charges against appellant had any connection with the forgery charges against Cyra until he approved the plea bargaining for Cyra. Separate complaints had been filed against Cyra and appellant. The record does reflect that he did not contact appellant or discuss the forgery charges with him *at any time.*

█ The situation is the same as it would be if Assistant Public Defender were never notified of the appointment due to oversight or faulty mail delivery or otherwise. An appointed attorney must have sufficient time after being notified of the appointment to understand its nature and the involvement resulting from it and so assess the propriety of the appointment and the necessity of withdrawing from it. Representation is a two-way street. The recognition of it must come from both sides.

██ However, formality is not an essential element of employment of an attorney. Although the attorney-client relationship ordinarily rests on contract, the contract need not be an express one. It may be implied from the conduct of the parties, such as the giving of advice or assistance, or such as failing to negate the relationship when the advice or assistance is sought if the attorney is aware of the reliance on the relationship. The general rules of agency apply to the establishment of the relationship. Whether the relationship exists depends on the facts and circumstances of each case. *Kurtenbach v. TeKippe,* Iowa,

260 N.W.2d 53 (1977); *Westinghouse Electric Corporation v. Rio Algom Limited,* D.C. N.D.Ill., 448 F.Supp. 1284 (1978); *Mattco, Inc. v. Mandan Radio Association, Inc.,* N.D., 246 N.W.2d 222 (1976); *Nicholson v. Shockey,* 192 Va. 270, 64 S.E.2d 813 (1951); *Delta Equipment and Construction Co. v. Royal Indemnity Co.,* La.App., 186 So.2d 454 (1966); *Crest Investment Trust, Inc. v. Comstock,* 23 Md.App. 280, 327 A.2d 891 (1974).

The statute relative to the representation of a needy person is not conclusive with respect to the commencement of the relationship. Subsections (c) and (d) of § 7–1–111, W.S.1977, provide:

"(c) If a court determines that the person is entitled to be represented by an attorney at public expense, it shall promptly *notify the public defender or assign an attorney,* as the case may be.

"(d) Upon notification or assignment under this section, the public defender or assigned attorney, as the case may be, shall represent the person with respect to whom the notification or assignment is made." (Emphasis supplied.)

Whether it was intended that the attorney "shall represent" the defendant when he receives the notification or assignment or when it is transmitted is not made clear. However, as indicated, common sense and practicality would indicate the necessity for the attorney to have knowledge of the appointment and have time to react thereto with reference to conflict of interest, health reasons, scheduling, etc.

█ Proper judicial process would be thwarted in many instances if the *appointment alone* of counsel to represent a defendant established the *fact* of representation itself. Many times counsel promptly calls attention of the appointing authority to conflicting interests which make the appointment improper. In such cases, should the defendant be able to secure a dismissal of the action on the basis of the appointment which was immediately withdrawn as a conflict of interest? We think not. The representation itself does not occur until

there is some acknowledgment by counsel of the appointment. The acknowledgment may be a failure to assess the conflict and ask for a removal in a prompt fashion *after learning of the appointment.*

In most instances in which this problem is presented to the courts, the conflict or potential conflict becomes known or arises *after* the attorney knows of his appointment and has an opportunity to gauge the effect of it. The record does not place this case within those instances.

As previously said, the record does not reflect representation of appellant of any kind or degree by Assistant Public Defender in connection with the forgery charges, and the trial court did not abuse its discretion in so holding.

We must address one other aspect of this issue. Since Assistant Public Defender did not represent appellant at all, and since Mr. Toner was not appointed to represent him until September 26, 1978, appellant was not represented by anyone from the time of his initial appearance before the justice of the peace on September 12, 1978, until September 26, 1978. Was appellant's constitutional right to effective assistance of counsel thereby violated?

■ He was entitled to such assistance during a "critical period of the proceedings." *Powell v. State of Alabama,* 287 U.S. 45, 53 S.Ct. 55, 59, 77 L.Ed. 158 (1932). A "defendant is entitled to be represented by counsel at all stages of the proceeding." *Hoskins v. State,* Wyo., 552 P.2d 342, 350 (1976). See Rule 6(a), W.R.Cr.P. for similar language. A "stage" of the proceedings is a point in the proceedings in which an important aspect of it occurs or fails to occur. It is a "critical period" of the proceedings. The trial itself is not the only critical stage of the proceedings for the purpose of effective representation of counsel. A critical stage of the proceedings has been held to include such as: arraignment, *Powell v. State of Alabama,* supra; preliminary hearing, *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); after the initiation of adversary judicial criminal proceedings, *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); at custodial interrogation, *Miranda v. State of Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and *Escobedo v. State of Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964); at post-indictment lineup, *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); at corporeal identification after initiation of adversary judicial criminal proceedings, *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977).

■ Appellant was represented at the preliminary hearing and at all times subsequent thereto. The record does not reflect that he was in a lineup, or subject to corporeal identification, or interrogated by the police or prosecution, or subjected to any investigative strategies or judicial proceedings during the period between September 12 to 26, 1978. There is no indication of any action with reference to appellant during that period, whether or not it be critical or noncritical. The proceedings were not on the "stage" during that period.

Finally, we note that the suggestion of disadvantage in the plea bargaining race is without merit. As previously noted, there is "no constitutional right to plea bargain." *Weatherford v. Bursey,* 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). But even should there be some right to engage in a race to the witness stand, appellant lost the race in this instance before Assistant Public Defender was appointed. Cyra had given his statement to the police at the time of his arrest.

"* * * [N]o right can arise in a defendant until plea discussions are voluntarily entered into by authorized government agents * * *." *Cooper v. United States,* 4th Cir. 1979, 594 F.2d 12, 19–20.

"* * * But surely appellant does not contend that had he been properly represented at the outset, his attorney would have *prevented* Freeman from becoming a witness; nor contend that he would have induced Freeman to testify falsely!" *People v. Davis,* D.C.App., 3rd Dist., 210

Cal.App.2d 721, 26 Cal.Rptr. 903, 909 (1962). (Emphasis not supplied.)

## CHANGE OF VENUE

The unrelated offense in which appellant was involved resulted in a verdict of guilty of first-degree sexual assault. The verdict was returned on November 21, 1978, and appellant was sentenced on January 17, 1979, on that charge to serve seven to twenty years in confinement. The case received front page press coverage in the Sheridan area. Trial of the appellant on the forgery charges occurred on February 20, 1979. Shortly before the forgery trial, appellant was charged with yet another crime of taking part in a sex-related assault on another prisoner in the county jail, and the charge was pending at the time of the forgery trial. The sex-related assault charge also received press coverage in the Sheridan area and in a Casper newspaper.

On the basis of such publicity, appellant moved for a change of venue more than fifteen days prior to trial pursuant to the requirement of Rule 23(a), W.R.Cr.P.[3] He renewed the motion at the conclusion of the voir dire. He contends that such publicity created a "reasonable likelihood" that a fair trial could not be had, and that the determination of such "reasonable likelihood" is the proper standard to apply for resolution of this issue. Appellant also points to the fact that nine of the twenty individuals called to sit on the jury[4] indicated on voir dire that they had read some such publicity. His challenges of seven of them for cause were denied.[5] After extensive voir dire, some of which was conducted in chambers and of individual jurors (so that other jurors would not hear specifics, if any, in the questions and answers concerning the previous trial

and the pending charge), the judge commented, "I don't think.any of them have shown in answer to your questions that they couldn't act as a fair and impartial juror." In this respect, we note that the issue here presented to us concerns the propriety of the ruling on a request for *change of venue,* and it is not with reference to the rulings on the challenges for cause and to the question of the fairness and impartiality of the jury members in that context.

We last addressed the change of venue issue in *Collins v. State,* Wyo., 589 P.2d 1283, 1289 (1979), wherein we noted:

> "Under the criminal rule, in order for a change of venue to be granted, the burden is upon the defendant to show prejudice so great or general as to prevent his receiving a fair and impartial trial and the decision is within the sound discretion of the trial judge. * * * "

Since the question is largely one of fact, the trial judge's decision will stand unless it is clearly against the logic or reasonable deduction to be reached on the evidence. Stated otherwise, the decision will stand unless it is clearly erroneous. *Stroud v. United States,* 251 U.S. 15, 40 S.Ct. 50, 64 L.Ed. 103 (1919), reh. den. 251 U.S. 380, 40 S.Ct. 176, 64 L.Ed. 317 (1920); *Jarvis v. Hamilton,* 73 Idaho 131, 246 P.2d 216 (1952); *Edwards v. State,* 9 Okl.Cr. 306, 131 P. 956 (1913).

As stated in *Collins v. State,* supra, 589 P.2d at 1289:

> " * * * Even if any juror was aware of, and could recall, the facts as reported by the news media, there is no requirement that such a person be totally ignorant of the facts and issues involved. * * * "

---

**3.** Rule 23(a), W.R.Cr.P., provides:

"* * * The court upon motion of the defendant made at least 15 days prior to the date set for trial, shall transfer the proceeding as to him to another county, whether or not such county is specified in the defendant's motion, if the court is satisfied that there exists within the county where the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial in that county."

**4.** Twelve were originally called, appellant exercised six of his peremptory challenges, and two were called to obtain an alternate juror.

**5.** Of the nine who had read some of the publicity concerning the previous trial and/or the pending charge, three were on the jury. Another one of those on the jury indicated that he had read some publicity concerning the charge for which appellant was on trial.

■ It is more difficult today, with the rapid communication aids, than it was when our jury system first developed to find jurors who do not have some knowledge of newsworthy items as reported by the news media; but the restricted transportation aids of that time resulted in more isolation in the existing communities, and juries were often composed of neighbors and acquaintances who brought some personal knowledge of the defendant and of the incident to the trial. Nonetheless, the jury system developed as a fair and proper judicial device. One need not be isolated from all information concerning the incident under consideration to be a fair and impartial juror.

■ A review of the record, including the news items, arguments, voir dire, evidence, and instructions[6], do not reflect an abuse of discretion by the trial judge in denying the motions for change of venue under any standard for the determination.

## QUALIFICATION OF EXPERT WITNESS

Appellant contends that the trial court also abused its discretion in accepting the testimony of a witness as an expert concerning appellant's handwriting on the checks in question.

The witness testified that the only special training he had received in handwriting analysis was a three-week course at a school conducted by the Secret Service at Washington, D. C. in 1974; that he had a two-year college education at Casper College; that he testified as an expert only four times in district court; that he did not belong to any questioned document professional organizations; that he did not subscribe to periodicals dealing exclusively with questioned documents; that the percentage of his time devoted exclusively to examining questioned documents was "very

limited"; and that he did not lecture or publish articles on the subject.

The foregoing was elicited from the witness by appellant on cross-examination after the witness had given his opinion on direct examination. Appellant had objected when the witness was asked for the opinion, but he did not request voir dire to inquire as to his qualifications at that time.

In any event, the witness testified on direct examination that he was a sergeant on the Casper Police Department, and that he had conducted document examination for that department and several other agencies in the state since 1974; that he knows of two other examiners in the state and that they discuss cases between them; that he has examined in excess of 5,000 documents since 1974; and that he previously qualified as an expert in the Fourth and Seventh Judicial Districts and in several county courts. He also detailed the methods used for handwriting comparisons.

■ The record was sufficient for the trial court's determination that the witness had knowledge, training, skill and experience beyond that of a lay person and which could be of aid to the jury in resolution of the issue before it. Therefore, the trial court did not clearly abuse its discretion in accepting the witness as an expert. And appellant "recognizes the well established rule that the district court's determination of whether an expert's qualifications are established will not be disturbed except in extreme cases or when a clear abuse of discretion is shown," referring to *Lee v. State*, Wyo., 556 P.2d 217 (1976), and Rule 702, W.R.E.[7] Also see *Runnion v. Kitts*, Wyo., 531 P.2d 1307 (1975).

Appellant's cross-examination of the witness concerning his qualifications was pertinent for jury consideration with respect to

---

6. The jury was instructed not to be influenced by sentiment, conjecture, passion or prejudice and to conscientiously and dispassionately consider only the evidence produced in court.

7. Rule 702, W.R.E., provides:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

the weight to be given to the testimony,[8] but the entire record does not reflect an abuse of discretion by the trial court in admitting the expert testimony.

## IDENTIFICATION ELEMENT IN HABITUAL CRIMINAL CHARGE

After reception of the guilty verdict on the two forgery counts, evidence of violation of the habitual count was presented.[9] It consisted of: (1) an authenticated copy of a judgment and sentence of the District Court, Fourth Judicial District, County of Sheridan, State of Wyoming, filed February 6, 1964, in the case of the *State v. Albert Chavez, Jr.*, on conviction of auto theft; and (2) an authenticated copy of a judgment and sentence of the United States District Court of the District of New Mexico filed April 14, 1972, in the case of *United States v. Albert Chavez, Jr.*, on conviction of voluntary manslaughter. Appellant's motion for a directed verdict on the ground that his identity with that of the defendants in the 1964 and 1972 cases was not established was denied. Appellant did not present any further evidence and the jury returned a verdict of guilty.

▇▇▇ The authenticated copies of the record of convictions were sufficient to establish prima facie the former conviction element of an habitual criminal offense.[10] But the offense has two elements: (1) former convictions of the felonies; and (2) identity of accused as the person previously convicted.

" * * * In a criminal prosecution wherein the defendant is accused of a prior conviction, two questions of fact are presented. The first is whether the prior judgment has been rendered. The second is whether the person named in the prior judgment is the same person now accused of that prior conviction. * * * " *State v. Cobb*, 2 Ariz.App. 71, 406 P.2d 421, 425 (1965).

The proposition is concisely stated in the Annotation on "Evidence of identity for purposes of statute as to enhanced punishment in case of prior conviction", 11 A.L.R.2d 870, p. 872:

"It is axiomatic that when an enhanced punishment for a particular criminal offense is sought because of a prior conviction, the present defendant must be the same person who was previously convicted. It necessarily follows that proof of such identity is an essential part of the case of the prosecution * * *."

This is not changed by § 6–1–111, W.S. 1977.[11] It does not speak to the element of identity. As said in *People v. Casey*, 399 Ill. 374, 77 N.E.2d 812, 815 (1948), concerning an almost identical Illinois statute:

"Every person convicted in this state of a felony, who shall previously have been twice convicted of a felony upon charges separately brought and tried, which have arisen out of separate occurrences either in this state or elsewhere, shall be adjudged to be an habitual criminal and shall be punished by imprisonment in the state penitentiary for a period of not less than ten (10) years nor more than fifty (50) years."

---

**8.** The following instruction was given over appellant's objection:

"INSTRUCTION NO. 8
"A person is qualified to testify as an expert if he has special knowledge, skill, experience, training, or education sufficient to qualify him as an expert on the subject to which his testimony relates.
"Duly qualified experts may give their opinions on questions in controversy at a trial. To assist you in deciding such questions, you may consider the opinion with the reasons given for it, if any, by the expert who gives the opinion. You may also consider the qualifications and credibility of the expert.
"You are not bound to accept an expert opinion as conclusive, but should give to it the weight to which you find it to be entitled. You may disregard any such opinion if you find it to be unreasonable."

**9.** *Section 6-1 109, W.S.1977, provides:*

**10.** Section 6–1–111(c), W.S.1977, provides:
"(c) In any trial under the provisions of this act [§§ 6–1–109 to 6–1–111], a duly authenticated copy of the record of former convictions and judgments of any court of record for any of the offenses charged against the defendant indicted or informed against by the state shall be prima facie evidence of such convictions and may be used in evidence against the defendant."

**11.** See footnote 10.

"It will be observed that the statute gives the authenticated copy of the record of conviction prima facie effect as evidence, but there is the further question as to the defendant being identified as the person previously convicted. * * * "

The question here presented is whether or not the identity of name of appellant and of the persons previously convicted is sufficient to prima facie establish the required element of identity and supports the finding of identity in absence of rebutting testimony. This question can arise with or without a statute similar to § 6–1–111. It arises if the authenticated copies presented pursuant to that section contain names of the convicted person which are identical to the defendant.

There are two conflicting lines of authority on this question. Appellant and appellee argue the separate lines.

Appellant contends that a rule which affords to a concordance of names prima facie evidence of identity of person in absence of rebutting testimony, (1) shifts the burden to the defendant and virtually compels him to testify, and (2) relieves the state from proving each element of the crime beyond a reasonable doubt—both contrary to basic precepts of criminal law, citing *Sanchez v. State*, Wyo., 567 P.2d 270 (1977). He contends that such should not be sufficient to overcome the presumption of innocence.

Appellee contends that the requirement for the state to prove every element of the crime is not applicable since the charge of being an habitual criminal is not that of a crime, but is only a basis for enhancing the sentence for the crime for which defendant now stands convicted. It contends that the burden of proof is not shifted, rather it is the burden of going forward that is shifted, and once the presumption is contradicted, the state must meet the burden of proof. The two positions taken by appellant and appellee reflect the division of authority on this issue. See 11 A.L.R.2d 870, supra.

There is merit to both contentions. Our decision to accept appellant's position is grounded on two things: One, should a mistake in identity result in an habitual

criminal sentence, the error would be very serious. Two, the practicality of the results which should be obtained from each of the two positions directs the decision we here make. If the appellee's contention were upheld, a defendant could take the witness stand and deny identity. In anticipation of such, a proper preparation by the prosecutor would cause him to have the necessary proof of identity available for introduction into evidence. Since such proof is comparatively easy to obtain and present, the practical effect of upholding appellant's position upon the course of the trial is negligible—particularly in light of the serious matter with which we are dealing. The evidence of identity can be in the form of admission or confession of the defendant, photographs, similar birth dates and places, similar social security numbers or other identification numbers, certified fingerprint cards from prior arrests testified to by a fingerprint classifier to be those of the defendant, testimony of a prison official relative to his records, or any of the usual methods of establishing identity.

■ Accordingly, concordance of the names of appellant and of the persons convicted in 1964 and 1972 are not sufficient to establish prima facie evidence of identity for the purpose of an habitual criminal charge.

The final question to be addressed in this connection is whether we now remand the case for the purpose of taking further evidence on the question of identity or whether we simply declare the sentence as an habitual criminal to be void.

If we should remand for further proceedings, appellant would not thereby be placed in double jeopardy in violation of his constitutional rights. We do not reject appellee's argument that the nature of an habitual criminal charge is other than a charge of a crime. As said in *Waxler v. State*, 67 Wyo. 396, 224 P.2d 514, 518–519 (1950):

"42 C.J.S Indictments and Informations, § 145, page 1057, says * * * 'Habitual criminality is a status rather than an offense, and allegations of previous con-

victions made in indictments or informations brought under an habitual criminal statute do not constitute a distinct charge of crime, but go only to the punishment of the criminal.'

\*    \*    \*    \*    \*    \*

" 'The jury do [sic] not find the person guilty of the previous offense; they [sic] only find that he was previously convicted of it, as a historical fact.' *Reg. v. Clark* (1853) Dears.C.C. 198, 201, 169 Eng. Reprint 694."

Also see *Munoz v. Maschner*, Wyo., 590 P.2d 1352 (1979); *Scherer v. State of Wyoming*, 10th Cir. 1960, 278 F.2d 469; *Graham v. West Virginia*, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912). Since the habitual criminal proceeding is not for a criminal offense, a remand for additional proceedings therein would not constitute double jeopardy in violation of appellant's constitutional right.

The problem is well presented and discussed by the Utah Supreme Court:

"When a court determines that error was committed during the trial under an habitual criminal statute, a conflict of authorities is faced on the remedy to be followed. The courts agree that being an habitual criminal is not a crime. They divide over the question of whether the trial for habitual criminal must be tried by the same jury that tries the substantive offense and, if so, whether and how a new trial should be granted. To some extent, the division is explained by the difference in statutes and procedure. Four rules have developed.

"(1) The court should order a dismissal of the part of the complaint alleging prior convictions. Perhaps this rule can be limited to cases wherein the court has given judgment upon the criminal offense. The theory is that the status cannot be tried separately because it is not a crime. The decree of judgment, therefore, ends the jurisdiction of the court over the criminal complaint.

"(2) The court should order a new trial of both the status and the alleged crime. This order is usually given in jurisdictions which allow the state to present evidence or prior convictions in the same proceeding wherein the state presents evidence of guilt of the substantive crime. Apparently, this type order is not given in states which allow proof of status to be submitted only after the accused is found guilty of the substantive offense. Utah follows the latter procedure.

"(3) The court should give the prosecuting attorney his choice: either accept a new trial on both status and substantive crime or accept a dismissal of the part of the complaint alleging prior convictions. In these cases, the court accepts the validity of the argument that status cannot be tried separately because it is not a crime, but notes that no prejudicial error occurred during the trial of the substantive offense.

"(4) The court should order a new trial limited to. the question of status. The theory is that the procedure should be premised upon the accused's right to a fair trial, but should not be designed to produce legal loopholes. Since, in these jurisdictions, the trial on status occurs only after the trial of the substantive offense, the effect of the prejudicial error is limited to an easily severed issue of fact. Therefore, the new trial can fairly be limited to the question of status.

"Appellant contends that the court should choose among the first three rules because the Utah statute requires that both the substantive offense and the status be tried by the same jury. The Utah statute uses the phrase, ' \*  \*  \* the defendant shall be tried forthwith by the same jury. \*  \*  \*' The word 'shall' is usually presumed to be mandatory. Other uses of the word 'shall' in the same provision are clearly mandatory. Therefore, the word should be so interpreted here.

"The court rejects appellant's argument because no good reason appears why the legislature would intend such a result. The statute recognizes that even though the allegation of being an habitual criminal be included in the information charging the substantive crime, the question of status should be presented to the jury only after it determines the guilt of the defendant. The rule keeps the proof of prior crimes from the jury until after it

determines the issue of the substantive offense. This saves the accused from the prejudicial effect of proof that he has committed crimes in the past. The statute also guarantees the accused a prompt and speedy trial on the issue of status. Since the statute severs the trial of status from the trial of the substantive offense, it negates any reason for why error in the trial of status can possibly prejudice the trial on the substantive offense. * * " (Footnotes omitted.) *State v. Zeimer*, 10 Utah 2d 45, 347 P.2d 1111, 1112–1113 (1960), 79 A.L.R.2d 821.

▮ The power to prescribe punishment for acts prohibited belongs to the legislative branch of government. *Sorenson v. State*, Wyo., 604 P.2d 1031 (1979). In enacting §§ 6–1–109 to 6–1–111, W.S.1977, the legislature provided for increased punishment for those in the designated status of habitual criminal, and it set forth the elements of the status, i. e., (1) former convictions of, (2) one person. In providing therein that the defendant "shall be tried *immediately* by the *same* jury," § 6–1–111(b), W.S.1977, (emphasis supplied), on the issue of habitual criminal status, it could be said that the legislature was including that procedural matter which should more properly be subject to rules of court. In any event, the legislature obviously did not anticipate the situation before us in which a case on appeal cannot be remanded for action by an already discharged jury and at a time not "immediately" after the trial.

The proceeding with which we are concerned was a sentencing proceeding. The situation has similarity to the collection of data concerning a defendant as is necessary for proper sentence by means of a presentence report from the Department of Probation and Parole.

▮ Accordingly, this case will be remanded for further proceedings relative to sentencing.[12] See *People v. Green*, 66 Cal. App.3d 801, 136 Cal.Rptr. 241 (1977); *Bullard v. State*, Tex.Cr.App., 533 S.W.2d 812 (1976) and 548 S.W.2d 13 (1977); *State v. Harris*, Mo., 547 S.W.2d 473 (1977); *People v. Morton*, 41 Cal.2d 536, 261 P.2d 523 (1953); *State v. Hillerud*, 76 S.D. 476, 81 N.W.2d 130 (1957).

Although we have said that "[t]here is no constitutional right to a jury trial on the issue of a second offense, where the hearing is for the purposes of sentencing only," *Munoz v. Maschner*, supra, 590 P.2d at 1358, the provisions of § 6–1–111(b), W.S.1977 relative to a jury trial should be followed insofar as possible, until the same are changed or superseded by other legislation or by rule of court.

Accordingly, the judgment is affirmed as it pertains to the conviction on the substantive charges, and it is reversed on the finding of habitual criminal status, with the case remanded for proceedings relative to determination of the habitual criminal status by a jury and for resentence thereafter.

▮

12. "If part of a divisible sentence is illegal or improper, we may modify it by vacating or striking that part which is illegal and improper and affirming the balance." *Sorenson v. State*, Wyo., 604 P.2d 1031 (1979). In this instance the sentence for the substantive crime and that for habitual criminal were imposed at the same time, and the sentence on the substantive crime may have been entirely different if the trial court were not also sentencing on the habitual criminal status. Therefore, the sentences cannot be said to be divisible.