**Arlan G. REYNOLDSON,**
**Appellant (Defendant),**

v.

**The STATE of Wyoming,**
**Appellee (Plaintiff).**

**No. 86-233.**

Supreme Court of Wyoming.

June 3, 1987.

Leonard D. Munker, State Public Defender; Julie Naylor, Appellate Counsel; and Norman A. Newlon, Legal Intern, for appellant.

Peter J. Mulvaney, Deputy Atty. Gen., John W. Renneisen, S. Asst. Atty. Gen., and Karen A. Byrne, Asst. Atty. Gen., for appellee.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

URBIGKIT, Justice.

Appellant Arlan G. Reynoldson, and his co-defendant George O. Pugh, were charged with a seven-count auto-theft offense (joy-riding), pleaded guilty, and were sentenced to seven concurrent four- to ten-year penitentiary terms. Within 120 days, as provided by statute and rule, the district court amended the sentences for Reynoldson by suspending confinement and providing a term of seven years probation. Within eight months after release, Reynoldson was rearrested for a house burglary, and resentenced to the original term less credit for time served.

Appellant, by this second post-conviction, post-revocation-relief petition, challenges the original guilty pleas and denies that he received effective assistance of counsel because he was represented by the same appointed counsel as co-defendant Pugh. He contests the adequacy of the proceeding in which his guilty plea was entered, and raises the following issues:

1. Whether the trial court accepted a guilty plea in contravention of Rule 15, W.R.Cr.P., resulting in a denial of due process,

and

2. Whether defense counsel's multiple representation of co-defendant deprived appellant of his constitutional right to effective assistance of counsel.

Rule 15, W.R.Cr.P. is generally the same as Rule 11, F.R.Cr.P.

From the record of the arraignment when pleas were entered, we can generally discern the following.

On December 14, 1982, Pugh unlawfully took a truck belonging to Steven and Linda Andrews, and then picked up appellant. On the same day, he again "borrowed" a second vehicle, belonging to Merle and Kathryn Woodard, from the vicinity of the Woodard residence, picked up Reynoldson, and then wrecked the vehicle. Never to be deterred, the parties next found the keys to a vehicle of Lovercheck Land & Cattle Company at LaGrange, got the vehicle from a garage, and took off with it to again end up in a wreck—three vehicles, two wrecked, one day. On December 23, four more vehicles were involved. Pugh and appellant were at the Torrington bars getting drunk, and on leaving one bar saw a vehicle belonging to Donald and Dianna Koeteman outside with its motor running, and took off. This vehicle was apparently not damaged. Later that same day, they found a GMC truck belonging to Lanphier Farms, Inc., with the keys in it, on the road out towards Lingle, which they drove away.

As to the sixth and seventh counts encompassing the contested pleas, a Chevrolet truck belonging to Jerry and Glenda Kraus was first taken and damaged. Reynoldson was unable to relate to the court what had occurred, because, "I was really

pretty drunk, and I was taking acid. I don't really recall that one." Finally, on the same day, James and Dale Gheen's Ford truck was driven and damaged. As to this last charge, after Pugh generally related the events at the arraignment, the following was said:

"THE COURT: Is that true Mr. Reynoldson?

"MR. PUGH: Yes."

This court cannot know whether this is a typographical error, as it likely was, but in any event, the court will now accept the written record as presented.[1]

Both Pugh and appellant were represented by the same attorney at the plea and sentencing sessions, having requested appointment of counsel as indigents.

In regard to any plea bargain, the defendants related:

"THE COURT: Are you both making your plea after talking to your attorney? Mr. Reynoldson?

"MR. REYNOLDSON: Yes.

"THE COURT: Mr. Pugh?

"MR. PUGH: Yes.

"THE COURT: Now, plea or sentence bargaining, an agreement between your attorney and the prosecution, is permissible but is not binding on the Court, and the Court may reject that agreement. You both understand this?

"MR. PUGH: Yes.

"MR. REYNOLDSON: Yes.

"THE COURT: All right. Now, I gathered that there had been no plea agreement as such; is that correct?

"MR. MOXLEY: There has been some agreement, your Honor. We have agreed to waive the presentence investigation and allow the State to argue sentencing unopposed at this time. We have agreed that any sentences imposed on these counts would run concurrently.

"THE COURT: And you, of course, have the right to make a motion for sentence reduction, you understand this?

"MR. MOXLEY: Yes.

\*       \*       \*       \*       \*       \*

"THE COURT: Okay. All right, the Court finds that George Owen Pugh and Arland [sic] G. Reynoldson are both alert. They are not under the influence of alcohol or drugs nor suffering from any mental defect which would affect their ability to understand these proceedings, and that they are both competent to enter a plea of guilty to each of the counts, that the plea is knowingly and voluntarily made after consultation with competent counsel, without any improper inducement or conditions, and with an understanding of the charges and the direct consequences. There is a factual basis for the guilty plea on each of the seven counts, which the Court accepts. Now, normally, we would ask for a presentence investigation at this time, but counsel has stated that that was waived by both of you."

With prior waiver of preliminary hearing, the trial court entered a judgment and sentence for both defendants on each charge, to be served concurrently, of four to ten years with credit for 19 days for time served.[2]

1. If Reynoldson was under the effects of acid and alcohol for the sixth offense, as he now contends, it could be questionable whether he had regained his sobriety by the time of the seventh "trip" on the same day.

2. Wyoming's joyriding statute was derived from § 31–317, W.S.1957 which constituted the offense a felony. The statute was repealed by Ch. 75, S.L. of Wyoming 1982, with an effective date of July 1, 1983. Chapter 171, S.L. of Wyoming 1983 reinstated the offense in adoption of Section 4 (§ 31–11–102) to provide for a one-year high misdemeanor. Chapter 171 was approved March 8, 1983 and effective also July 1, 1983. The present law was restated in Ch. 48, S.L. of Wyoming 1984 as a high misdemeanor with no apparent change.

The offenses for which Reynoldson was charged occurred on December 14, 1982 (three vehicles) and December 23 (four vehicles). In one case he was apparently being pursued and ran off the road into a guidepost, resulting in car damage and his physical injury. The probation supplemental order indicates damage to four cars: Woodard $2,161.99; Lovercheck Land & Cattle Company $1,227.84; Gheen $407.48; and Kraus $330.00, for a total of $4,127.31. The record does not show whether this amount is the entire cost of the damages or a partial amount of the damages divided between appellant and his co-defendant.

In early April 1983, appellant filed a pro-se motion and an affidavit for sentence reduction. Later in the month, his appointed counsel also filed a similar motion. The trial court then suspended the confinement sentence as of July 1, 1983, and placed appellant on probation for seven years. Included in the probation terms was:

"4. That said Defendant shall make restitution in the total amount of $4,127.31, to be paid in monthly payments as specified by the local Probation and Parole Officer upon determination of Defendant's ability to pay; all such payments to be made to the Clerk of the District Court of Goshen County by cash, certified check, cashier's check or money order, for distribution in accordance with the Supplemental Order filed herein."

The supplemental order defined the restitution amounts involved:

"* * * Merle J. Woodard, $2,161.99; Lovercheck Land & Cattle Company, $1,227.84; Dale Gheen, $407.48; Jerry Kraus, $330.00."

On February 2, 1984, a petition for revocation of probation and issuance of a bench warrant was filed, alleging that on December 14, 1983, appellant had committed felony burglary. The warrant alleged that he had broken into and entered a residence in Saratoga, Wyoming, stolen a television set, a knife, a stereo, and food, and later pawned the television and stereo in Scottsbluff, Nebraska. Attached to the petition was a statement signed by appellant and witnessed by an attorney from the Public Defender's office, which said:

"2. That following the grant of probation, specifically on December 14, 1983, I entered the residence of Brett and Lane Ussery at 805½ West Spring Street in Saratoga, Wyoming, without their consent, and removed from that premises several items including a television set, a knife, and a stereo, also without consent.

"3. That I pawned the television and stereo taken from the Ussery residence in Scottsbluff, Nebraska, using my own name."

At the revocation hearing Reynoldson attempted to blame someone else as the principal for the burglary, but admitted pawning the merchandise but not his receipt of the money obtained. Scottsbluff, Nebraska is "a ways down the pike" from Saratoga, Wyoming. Probation was revoked on February 9, 1984 by reinstatement of the previous sentence with credit of 212 days for previous time served.

Two months later, Reynoldson again filed a motion for reduction of sentence, which was denied May 1, 1984. A pro-se petition for post-conviction relief was filed December 20, 1984, raising three issues: (1) that the crime was a misdemeanor when sentenced; (2) the plea was involuntary; and (3) unintelligent and ineffective assistance of counsel involving co-representation conflict of interest. After a course of correspondence between appellant and the court essentially encompassing a denial of the requested relief, appellant then filed a further motion to vacate sentence on September 11, 1985, and a motion for a new trial on January 6, 1986. Pugh, who was still in the penitentiary on October 31, 1985, signed an affidavit saying that he had actually said that Reynoldson was innocent, not guilty, of the joyriding episodes. On February 6, 1986, appellant filed a motion for credit for street time from July 1, 1983 until his arrest for the burglary of December 14, 1983.

To answer this course of events, the district judge thoughtfully appointed the office of the Public Defender on February 7, 1986 to represent appellant, which counsel then filed another motion for post-conviction relief. That motion, along with appellant's request for street-time credit, was denied, and it is that decision from which this appeal is now presented.[3] This court

---

Considering that sentencing for the offenses occurred on January 12, 1983, if Reynoldson would have pleaded innocent and could have either delayed the trial or sentencing until after July 1, 1983, these offenses would have been only a misdemeanor by virtue of the changed

law. *Attletweedt v. State,* Wyo., 684 P.2d 812 (1984). However, as misdemeanors, consecutive rather than concurrent sentences could have been given.

**3.** In result and by statement in the decision letter, the district court left the future of appel-

is presented with the two issues addressed in the post-conviction-relief petition: inadequate information upon which a guilty plea was accepted, and inadequate representation because the same appointed counsel represented both co-defendants, each of whom pleaded guilty at the same time.

The statute in force at the time of the offenses provided:

"Any person or persons who shall without specific authority of the owner or his duly authorized and accredited agent, willfully, wantonly, or maliciously take possession of, or drive, or propel, or take away, or attempt to take possession of, drive, propel, or take away an automobile, the property of another, for the purpose of temporarily making use of the same, *or who shall knowingly aid, abet or assist another in so doing shall,* upon conviction, be guilty of a felony and shall be punished by imprisonment in the state penitentiary for not less than one (1) year nor more than ten (10) years." (Emphasis added.) Section 31–11–102, W.S.1977 (formerly § 31–317, W.S.1957).

### WAIVER–LACHES

Because this appeal now comes to this court from the third trial-court post-conviction-relief consideration, we are concerned with the number of times a convicted defendant is entitled to litigate the same issues. That concern is particularly manifest in this case where appellant received suspension of confinement after incarceration with time credit of 212 days, and failed to honor that suspension by his subsequent involvement in burglary and sale of stolen property. We will not determine those issues specifically in this case, but reflect that a comprehensive and adequate consideration and a finite disposition in one post-conviction-relief proceeding is both indicated and mandated in the proper administration of the justice delivery system. The Wyoming post-conviction-relief statute provides:

"Any claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." Section 7–14–103, W.S.1977.

This present appeal constitutes a final appellate post-conviction review. The judiciary must find a time for its continued responsibility involving a particular criminal act to end. Thereafter, further societal responsibility is vested in the executive and legislative branches of constitutional government.

### JOINT REPRESENTATION OF CO-DEFENDANTS

Joint representation of co-defendants can be problemsome if a conflict status in some realistic fashion is indicated, but we do not find this to be that kind of case. The Goshen County-Torrington community is a rural farming area, and appellant was a native. It is beyond reasonable conception and our assumptive responsibility that appellant and his co-defendant Pugh were not knowledgeable about ownerships involved in the seven car incidents occurring in the two-day episodes. Getting into a vehicle a block from where it was initially taken for the purpose of using the vehicle for joyriding is hardly defensible under the purview of the statutory terminology. Additionally, the record reflects the opportunity given to appellant regarding any representation objection at court appearance:

"You are entitled to be represented by an attorney at every stage of the proceedings, either at your own expense, or if you are unable to afford an attorney, the Court may appoint one for you if you wish.

"Now, I was going to ask you if you have appeared before a justice of the peace, but I assume you both appeared but you waived your preliminary hearing; is that correct, Mr. Pugh?

"MR. PUGH: Yes.

"THE COURT: And Mr. Reynoldson?

"MR. REYNOLDSON: Yes.

lant in the hands of the Board of Parole. Mathematically computed, Reynoldson will have served his minimum on or about June 12, 1987, even without credit for special good time which could reduce the minimum sentence. Other information does not now suggest that appellant has been accruing special good time.

"THE COURT: Now, have you talked to your attorney, Mr. Moxley?

"MR. PUGH: Yes.

"THE COURT: Mr. Reynoldson, have you?

"MR. REYNOLDSON: Yes.

"THE COURT: And are both of you satisfied with his representation of you up to this point?

"MR. PUGH: Yes.

"MR. REYNOLDSON: Yes.

\* \* \* \* \* \*

"THE COURT: Are you both making your plea after talking to your attorney? Mr. Reynoldson?

"MR. REYNOLDSON: Yes.

"THE COURT: Mr. Pugh?

"MR. PUGH: Yes."

This court is disinterested in establishing a rule which minimizes caution in co-representation cases or, even with recognition of the limited resources of the public defender, which would not emphasize the importance of different counsel where any conflict in representation could be envisioned. *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed.2d 680, reh. denied sub nom. (1942). *Kretske v. United States*, 315 U.S. 827, 62 S.Ct. 629, 86 L.Ed. 1222 (1942); *Baty v. Balkcom*, 661 F.2d 391 (5th Cir. 1981); Kamisar, LaFave and Israel, Modern Criminal Procedure (5th ed. 1980); 3 Wharton's Criminal Procedure, § 417 at 132 (12th ed. 1975). In this case, however, there simply is nothing of record which reflects a disadvantage for the appellant which must be shown in order for the ineffective-assistance-of-counsel claim to succeed. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Osborn v. Schillinger*, 639 F.Supp. 610 (D.Wyo.1986) (discussing same counsel when all defendants plead guilty); *Oliver v. Wainwright*, 782 F.2d 1521 (11th Cir.), cert. denied — U.S. —, 107 S.Ct. 313, 93 L.Ed.2d 287 (1986). See, however, *Chavez v. State*, Wyo., 604 P.2d 1341 (1979), cert. denied 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980). It must be recognized by both criminal defendants and trial attorneys that the court is not obligated to assume the role of a defendant's counselor. *State v. Gilnite*, 202 Conn. 369, 521 A.2d 547 (1987).

Appellant, in recognizing the objective standard of reasonableness and fundamental fairness, discusses persuasively that the possibility of a disparity and differential culpability in reasonable sentence existed. That consideration was amply addressed by the trial court in the 1983 modification of sentence with probation, which then afforded defendant minimal confinement. The argument possibly could have been more persuasive if probation was not given by the initial post-conviction sentence reduction. The *Glasser, Cuyler,* and *Holloway* type of prejudice is not demonstrable in this record. See *Hill v. Lockhart*, supra. Furthermore, under Wyoming criminal statutes, the accessory is subject to the same penalties as the principal. Section 6-1-201, W.S. 1977; *Linn v. State*, Wyo., 505 P.2d 1270, cert. denied sub nom. (1973). *Lucas v. Wyoming*, 411 U.S. 983, 93 S.Ct. 2277, 36 L.Ed.2d 959, reh. denied 412 U.S. 944, 93 S.Ct. 2780, 37 L.Ed.2d 405 (1973).

## INADEQUATE INFORMATION UPON WHICH THE GUILTY PLEA WAS ACCEPTED

Appellant argues extensively by brief, and particularly in oral argument, that the text of the transcript does not justify the acceptance of the plea on some of the included offenses. We agree, without recognizing any particular resulting difference.

In the context of the oft-repeated appellate rule that hard cases make bad law, we would not want to utilize this circumstance to disadvantage another individual in a different factual situation by a casual comment that "it doesn't make any difference." Specifically addressing our attention to the sixth and seventh offenses, we do not find sufficient facts demonstrated from the record which could justify entry of a sen-

tence by the court, and the convictions on those counts are reversed.

"Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Rule 15(f), W.R.Cr.P.

*Hoggatt v. State*, Wyo., 606 P.2d 718 (1980); *Cardenas v. Meacham*, Wyo., 545 P.2d 632 (1976); *State v. Coleman*, Ariz. App., 733 P.2d 1166 (1987).

Upon remand, an order should be entered reversing the conviction as to the sixth and seventh offenses, since a retrial on those charges would not now be possible considering the present misdemeanor status of offenses under the joyriding statutes. Appellant has served as much time as a new sentence could afford.

I would reverse the convictions as to Counts VI and VII; the convictions as to Counts I through V are affirmed; and the sentence entered following revocation of probation is affirmed.

THOMAS, Justice, specially concurring and dissenting.

I am in accord with the disposition of this case as reflected in the majority opinion with the exception of the reversal of the conviction as to Count VII. My perception of the record is that Reynoldson's co-defendant sufficiently explained the circumstances relating to Count VII so that a factual basis for the plea was established in accordance with Rule 15(f), W.R.Cr.P. I do not understand the requirement of the rule to be that the factual basis must be established by interrogation of the defendant himself, and I cannot distinguish the factual basis that was established for Counts I through V from the factual basis established with respect to Count VII in any qualitative context.

Consequently, I would dissent from the disposition of the majority with respect to Count VII, and I would deny relief with respect to that count as well as Counts I through V.

CARDINE, Justice, partially dissenting, with whom BROWN, Chief Justice, joins.

I concur in the affirmance of the convictions upon Counts I through V and would also affirm the convictions upon Counts VI and VII. This appellant was involved in the theft of seven cars during a two-day drug and drinking spree in a sparsely populated rural community. Appellant admitted stealing with his friend five cars. He does not deny stealing two other cars taken at the same time and place; appellant confesses he could have taken them but was too drunk and/or drugged to remember. Upon these facts and circumstances, I would not require that a trial be held upon Counts VI and VII. It did not appear at arraignment that appellant wanted a trial upon Counts VI and VII. He knowingly and intelligently—with advice of counsel—chose to plead guilty. His admissions were more than sufficient for acceptance of his guilty pleas. I, therefore, would affirm as to all counts.