**Lindberg SHONGUTSIE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 90–269.

Supreme Court of Wyoming.

Feb. 24, 1992.

Lee E. Christian, Jostad Associates, Fort Collins, Colo., for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., Mary B. Guthrie, Jennifer L. Gimbel, Larry M. Donovan, Sr. Asst. Attys. Gen., for appellee.

Before URBIGKIT, C.J., and THOMAS, CARDINE, and GOLDEN, JJ., and BROWN, J., Ret.

THOMAS, Justice.

The essential issue that the court must resolve in this case is whether the representation of Lindberg Shongutsie (Shongutsie) and his wife, Rebecca Shongutsie, by the same attorney at a joint trial deprived Shongutsie of his constitutional right to effective assistance of counsel. Collateral issues are presented involving the consent of Shongutsie to the joint representation; suppression by the State of discoverable materials; a claim of unlawful joinder; and the impropriety of the imposition of restitution at sentencing. We reverse and remand this case for a new trial because of the conflict of interest presented by the representation of Shongutsie and his wife by the same attorney, which led to a deprivation of his constitutional right to counsel. We deem it unlikely that the other questions will reoccur in light of this reversal, and our discussion of them will be limited.

Shongutsie presents the following issues in his Brief of Appellant:

I. Did Appellant's attorney's representation of conflicting interests deny the Appellant his Sixth Amendment right to effective assistance of counsel?

II. Did the trial court err in failing to inquire into whether the Appellant knowingly and voluntarily waived his constitutional right to conflict-free representation?

III. Did the prosecution's suppression of information that was helpful in conducting cross-examination deprive the Appellant of due process?

IV. Was it plain error for the trial court to require the joinder of four co-defendants charged with separate and distinct crimes?

V. Were restitution costs assessed by the trial court improper without a finding of ability to pay?

The State of Wyoming, as appellee, states the issues in this way:

I. Whether the representation of the appellant and his wife by retained counsel constituted ineffective assistance of counsel.

II. Whether the trial court had an affirmative obligation to inquire if the defendants approved of the joint representation.

III. Whether the State suppressed exculpatory evidence.

IV. Whether joinder of the trials of the four codefendants was proper.

V. Whether the trial court properly assessed costs of restitution on the appellant.

While arising out of a grim and repugnant background, the facts material to the disposition of this case are not complex. The Riverton Holiday Inn sponsored a public dance that commenced in the evening of September 9, 1989 and continued into the early morning hours of the following day. Citizens from the surrounding communities patronized the dance and, after it was over, a disturbance arose in the parking lot of the Holiday Inn. Personnel on the staff of the Holiday Inn and patrons of the Holiday Inn summoned the police because of the disturbance.

When they arrived, the police officers witnessed the aftermath of what had been a vicious street brawl involving an estimated twenty to thirty participants. The officers found damaged vehicles, broken windows, and a man lying on the pavement in a pool of blood. That individual was Richard "Dickie" Ferris, Jr. (Ferris), who had been severely beaten about the head. Ferris was in critical condition when transported by ambulance to the Riverton Memorial Hospital. Ferris then was transferred by air to the Wyoming Medical Center in Casper, where he died on September 14, 1989 as a result of blunt trauma to his head.

Following an investigation of these events and appropriate judicial proceedings, an information was filed charging Shongutsie with three criminal counts: I—first degree murder of Ferris; II—attempted aggravated assault of Donald Metzger, Jr.; and III—aggravated assault of Kelli Dollard. A separate information charged Rebecca Shongutsie with a single count of aggravated assault upon Ferris. Earl Warren also was charged with aggravated assault upon Ferris in a separate information. Finally, Russell Warren was charged with two counts of aggravated assault upon victims other than Ferris.

Initially, Shongutsie was provided with counsel appointed by the court. Subsequently, Shongutsie and his wife retained private counsel to represent them jointly. Earl Warren and Russell Warren each obtained the services of a separate attorney.

At their arraignments, all of the defendants entered pleas of not guilty. Following numerous motions, hearings, and conferences, the four cases were consolidated for joint trial before a jury. Initially the cases had been stacked to be tried separately with Rebecca Shongutsie's case to be tried first. Then a decision was made that Shongutsie's case should be tried first. Shongutsie objected to the joinder of the cases for trial, but argued that his case should be tried last. He told the court at a hearing on the matter that he would prefer a joint trial of all four cases to having his case tried first. The trial court then ruled that the cases would be tried jointly.

The trial commenced on June 25, 1990 and concluded on July 3, 1990. By its verdicts, the jury found: Shongutsie was not guilty of first degree murder, but guilty of the lesser-included offense of second degree murder. Also, Shongutsie was found guilty of the attempted aggravated assault of Donald Metzger, Jr. He was found not guilty of aggravated assault upon Kelli Dollard. Rebecca Shongutsie was found not guilty of the aggravated assault upon Ferris. Earl Warren was found guilty of the aggravated assault upon Ferris. Russell Warren was found guilty on only one count of aggravated assault involving a different victim.

The court sentenced Shongutsie to a term of not less than twenty, nor more than fifty, years on the charge of second degree murder and a term of not less than two, nor more than five, years on the charge of attempted aggravated assault with the sentences to run concurrently. In addition to the sentence to the Wyoming State Penitentiary, the court required Shongutsie to pay $50 on each count to the Crime Victims Compensation Fund and to pay restitution in the amount of $39,300, as well as the costs of prosecution. Shongutsie appeals from the judgment and sentence.

The primary contention in this appeal is that Shongutsie was denied his right to effective assistance of counsel in contravention of the guarantees provided in the Constitution of the United States and the Constitution of the State of Wyoming. Specifically, Shongutsie asserts that his pri-

vate counsel, in his dual advocacy, was confronted with actual conflicts of interest which adversely affected Shongutsie's representation. As an example of this conflict, Shongutsie argues that an actual conflict of interest arose when counsel had to decide whether to have Rebecca Shongutsie testify, in order to exonerate herself, knowing that she had made statements prejudicial to Shongutsie which were likely to come before the jury upon cross-examination. Shongutsie urges that the following exchange between counsel for the State and Rebecca Shongutsie was particularly prejudicial to his interests in the case:

[Examination was by counsel for the State and the witness was Rebecca Shongutsie.]

Q. Okay. And after Mr. Thompson talked to you, you were in a cell with other females?

A. Yes. Two women.

Q. And at that time, you knew that the body behind the pickup was Richard Ferris, Jr., didn't you?

A. That's what Mr. Thompson had indicated to me, yes.

Q. And when you were in that cell, you made statements like, "I hope we killed him." Didn't you?

A. No, I did not.

Q. And you made statements like, "We beat him up." Didn't you?

A. No, I did not.

Q. And you made statements like, "I hope he dies."

A. No, I did not.

Q. And you made statements about, "I hope Mr. Ferris is happy now." Didn't you?

A. No.

Q. And you make a statement saying that, "Well, we threw it in a horse trailer and they'll never find it." Didn't you?

A. No.

Q. And you also made statements along the lines of, "We knocked his brains in, and I hope he dies."

A. No.

The right to counsel is guaranteed by the Sixth Amendment to the Constitution of the United States and is applicable to the states by virtue of the Fourteenth Amendment to the Constitution of the United States. In addition, it is specifically articulated in Article 1, Section 10, of the Constitution of the State of Wyoming which provides: "In all criminal prosecutions the accused shall have the right to defend in person and by counsel...." This right to counsel includes a guarantee that the assistance of counsel be effective. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

The right to effective counsel encompasses the correlative rights that counsel be reasonably competent and that counsel be free from conflicts of interests. It is essential to differentiate between claims of ineffectiveness that are based upon lawyer incompetency and those that are based upon conflicts of interest arising out of multiple representation. *Compare, United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (right to reasonably competent attorney), with *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942) (right to conflict-free representation). If the claim is based upon lawyer incompetency, competency is presumed, and the defendant must accept the burden of affirmatively demonstrating deficient performance by counsel and prejudice to his rights. With respect to claims based upon a conflict of interest arising from multiple representation, prejudice often is presumed. In this case, we address only the law and the appropriate public policy relating to ineffective assistance of counsel claims that are based upon the right to have an attorney who is free from conflicts of interest.

The purpose of the constitutional right to effective assistance of counsel has been said to be "to insure that criminal defendants receive a fair trial." *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140, *reh'g. denied* 487 U.S. 1243, 108 S.Ct. 2918, 101 L.Ed.2d 949 (1988) (quoting *Strickland*, 466 U.S. at 669, 104 S.Ct. at 2055). The Supreme Court of the United States has emphasized that the denial of the assistance of counsel who is free

from conflicts of interest "can never be treated as harmless error." *Holloway v. Arkansas*, 435 U.S. 475, 489, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978) (quoting *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827–28, 17 L.Ed.2d 705 (1967)).

This court has adopted and applied federal precedent when analyzing effective assistance of counsel claims based upon the right to representation free from conflicts of interest. *See King v. State*, 810 P.2d 119 (Wyo.1991); *Gist v. State*, 737 P.2d 336 (Wyo.1987), *appeal after remand* 766 P.2d 1149 (1988); *Reynoldson v. State*, 737 P.2d 1331 (Wyo.1987); *Chavez v. State*, 604 P.2d 1341 (Wyo.1979), *cert. denied* 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980). The federal precedent in this area employs a two-fold analysis. First, the reviewing court examines the record to determine if the defendant or his attorney made timely objection to multiple representation at the trial level. If an objection was presented, the trial court is charged with the affirmative duty of appointing separate counsel or taking adequate measures to determine that the possibility of conflict is too remote to warrant the appointment of separate counsel. If the trial court fails to pursue those requirements, prejudice is presumed upon appeal and reversal is automatic. *Holloway.*

In those instances in which neither the defendant nor his attorney made any objection to multiple representation at the trial level, reversible prejudice is not automatically presumed according to federal precedent. In such an instance, the defendant is required to demonstrate on appeal that an actual, rather than an apparent, conflict of interest adversely affected the performance of his attorney. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). In the application of this standard, the defendant is entitled to a limited presumption of prejudice. He is required to show only that the performance of the attorney was less effective than it might have been absent the conflict of interest. *Strickland; Cuyler.* In aid of the defendant's position, the reviewing court is charged with a duty to search the record for an actual conflict and any corresponding adverse impact. *Gist.*

Federal precedent, in the context of a situation in which no objection was made, requires the reviewing court to undertake the highly speculative task of searching the record to identify actual conflicts of interest and some corresponding effect on representation. Review under such a standard is a purely *ad hoc* approach and, in our judgment, the standard is untenable. As the United States Supreme Court has pointed out:

> Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. For example, ... [joint representation] may well ... preclude[ ] defense counsel ... from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing recommendation would be acceptable. Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing ... the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another. Examples can be readily multiplied.
>
> ....
>
> [I]n a case of joint representation of conflicting interests the evil—it bears repeating—is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process.

*Holloway*, 435 U.S. at 489–90, 98 S.Ct. at 1181–82 (emphasis in original).

In conflict of interest cases, any effort to reconstruct trial strategy after the fact is exceedingly difficult and doomed to frustration because the record fails to tell a complete story. In our judgment, the right to effective, conflict-free representation is too fundamental to justify the court in engaging in "nice calculations as to the amount of prejudice [or adverse effect]

arising from its denial." *Glasser*, 315 U.S. at 76, 62 S.Ct. at 467.

Application of the standard applied in those cases in which no objection was voiced also has been troublesome for the trial courts. When an objection is made to the multiple representation, the trial court clearly is obligated to inquire into the possibility of conflict of interest. *Holloway*. If the possibility appears at all likely, the trial court then has an affirmative obligation to appoint separate counsel, or to obtain a knowing and voluntary waiver from the defendant of his right to counsel free from any conflict of interest. The failure to establish this on the record leads to an automatic reversal upon review. *Holloway*. In those instances, the strict guidelines significantly reduce the possibility of a claim of ineffective assistance of counsel when the case is appealed. The defendant either will have had separate counsel appointed, or he clearly will have waived his right to representation that is free from conflict of interest.

By contrast, when no objection is set forth at the trial level, the federal cases establish that the trial court is under no affirmative obligation to inquire into the possibility of conflict of interest unless it "knows or reasonably should know that a particular conflict exists." [1] *Cuyler*, 446 U.S. at 347, 100 S.Ct. at 1717. Traditionally, the trial courts have relied upon the ethical sense of responsibility of the attorney to call to their attention potential conflicts of interest. *Cuyler*. If the attorney does not report the conflict of interest, and the defendant does not object to multiple representation, the tendency of the trial court is to not address the issue. Thus, in such cases, the appointment of separate counsel for the respective defendants is not accomplished, nor is any waiver of the right to representation by an attorney free from any conflict of interest obtained and made a matter of record. In every such instance, then, there is an opportunity to argue an ineffective assistance of counsel claim on appeal.

This case is illustrative of the problem. Shongutsie and Rebecca Shongutsie were co-defendants in a case in which Shongutsie was charged with murder. They hired the same attorney to represent them. Neither Shongutsie nor Rebecca Shongutsie objected to the joint representation at the trial level, and the attorney did not report any problem relating to the joint representation. The attorney did express some concern about the potential for conflict, but the assertion made to the trial court was that the possibility was not a real probability. The trial court acquiesced in the attorney's conclusion and neither appointed separate counsel nor obtained a specific waiver. Shongutsie and Rebecca Shongutsie were then tried and, during the course of the trial, a conflict was present. Shongutsie was convicted and, in his appeal, he now asserts ineffective assistance of counsel. There is no record of any specific waiver of his right to proceed without being afforded the opportunity to be represented by counsel who was free from any conflict. The case necessarily must be reversed, and Shongutsie must be retried.

In light of the preceding analysis, we deem it no longer prudent to follow the federal dichotomy in analyzing claims of ineffective assistance of counsel that are premised upon a conflict of interest. Instead, we choose to more firmly protect the defendant's right to representation by an attorney who is free from any conflict of

---

1. On several occasions, different justices of the Supreme Court of the United States have argued strenuously that an affirmative duty should be imposed on trial courts to inquire into the propriety of multiple representation in every instance. *See, Cuyler v. Sullivan,* 446 U.S. 335, 352, 100 S.Ct. 1708, 1720, 64 L.Ed.2d 333 (1980) (Brennan, J., dissenting) (duty of trial court to ensure the defendants have not unwittingly given up right of effective assistance of counsel); *Cuyler,* 446 U.S. at 354, 100 S.Ct. at 1721 (Marshall, J., dissenting) (duty of trial court to inquire into whether there is multiple representation; warn defendants of inherent risks; and ensure multiple representation is by informed choice); *Burger v. Kemp,* 483 U.S. 776, 800, 107 S.Ct. 3114, 3129, 97 L.Ed.2d 638, *reh'g denied* 483 U.S. 1056, 108 S.Ct. 32, 97 L.Ed.2d 820 (1987) (Blackmun, J., Brennan, J., and Marshall, J., dissenting) (duty to ask defendant if he is aware of potential of conflict and to obtain waiver).

interest. As we stated in *Richmond v. State*, 554 P.2d 1217, 1223 (Wyo.1976):

> This court has never been blind to the fact that "protection of constitutional rights of an accused is not the peculiar province of the federal courts." *Dryden v. State*, Wyo.1975, 535 P.2d 483, 491. Nor are we blind to the rule that constitutional standards announced by the Supreme Court of the United States are minimal, which rights may be enlarged under State constitutional provisions if justifiable.

Further, in *Reynoldson*, 737 P.2d at 1336, we stated:

> This Court is disinterested in establishing a rule which minimizes caution in co-representation cases or, even with recognition of the limited resources of the public defender, which would not emphasize the importance of different counsel where any conflict in representation could be envisioned.

The potential for a conflict of interest not only can be visualized but, actually "inheres in almost every instance of multiple representation." *Cuyler*, 446 U.S. at 348, 100 S.Ct. at 1718. In addition, we are cognizant of the fact that the potential for prejudice is so great where a conflict of interest exists that any case-by-case inquiry is ill-advised and unwise. We, therefore, articulate the rule that prejudice will be presumed in all instances of multiple representation of criminal defendants and, in the absence of an appropriate waiver, multiple representation will constitute reversible error.

The product of that presumption of prejudice is that the trial court must, in each case in which the same attorney represents more than one defendant, separately advise each of those defendants of the right to be represented by an attorney free from any conflict of interest and of the dangers inherent in the multiple representation. Should any defendant decide to forego the representation by the attorney who is representing another defendant, the trial judge will appoint separate counsel for any defendant who qualifies for state-appointed counsel. On the other hand, if any defendant insists upon being represented by the attorney of his choice and chooses the attorney who is representing another defendant, the trial judge must obtain from that defendant a request, preferably in writing, to be represented by the attorney who is representing another defendant and must also obtain a knowing and voluntary waiver of the right to be represented by an attorney free from any conflict of interest. All colloquy between the defendant, the court, and counsel must be reported and transcribed, and the written request, if one is executed, must be included in the record. Courts in other jurisdictions have seen fit to impose similar prophylactic measures. *See, e.g., Harvey v. State*, 96 Nev. 850, 619 P.2d 1214 (1980); *Moreau v. State*, 588 P.2d 275 (Alaska 1978); *Commonwealth v. Davis*, 376 Mass. 777, 384 N.E.2d 181 (1978); *State v. Olsen*, 258 N.W.2d 898 (Minn.1977). *See also* Fed.R.Crim.P. 44(c).[2]

This rule of presumed prejudice that leads to reversible error promotes several important policies in a way that we find persuasive. First, the rule will discourage attorneys from accepting the role of a dual advocate in criminal cases and thereby potentially compromising their most fundamental duty—loyalty to the individual client. *Strickland*, 466 U.S. 668, 104 S.Ct. at 2052 (duty of loyalty is perhaps counsel's most basic duty); *see also* Model Rules of Professional Conduct Rule 1.7 (1984). As one commentator has noted, counsel's entire approach to a case of multiple representation results in compromise of each respective client's interests:

> The interests and defenses of co-defendants·are, as a general rule, antagonistic; and, given the fact of joint representa-

---

**2.** Fed.R.Crim.P. 44(c) provides, in pertinent part:

Whenever two or more defendants have been jointly charged ... and are represented by ... retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant to the right to the effective assistance of counsel, including separate representation.

tion, a strong likelihood arises that a conflict exists or will ensue. The inherent difficulty in such a situation is that a single attorney must simultaneously steer the defenses of each defendant on proper course thereby wasting much of his valuable courtroom concentration on the task of preventing scrapes and collisions between multi-client interests. He can no longer freely decide what will be most advantageous for the defense of one client without first weighing against it the disadvantages that might consequently accrue to the other. He must, in short, temper his strategy to a middle-of-the-road position. This condition, of course, imposes an artificial and strained approach on a singular counsel which prevents him from developing a full, aggressive defensive strategy. The shattering impact of skilled technique which ordinarily could be leveled in full force against the opposition must be partially, and often substantially, diffused in a constant concern to calculate the possible harm each maneuver might work on the co-defendant. Counsel must pick, choose, compromise and forego various attacks because of the threat of adverse repercussions to the interests of the co-defendant. He is thereby prevented from the use of all the weapons in his legal armory.

Arthur John Anderson, Jr., Note, *Conflict of Interests in Criminal Proceedings*, 23 Ark.L.Rev. 250, 254–55 (1969) (footnotes omitted).

Second, the rule promotes the effective administration of justice. It assists trial judges in fulfilling their duty of "jealously guarding" a defendant's right to effective assistance of counsel by explicitly defining the trial court's role in a case in which multiple representation is present. *See Glasser*, 315 U.S. at 71, 62 S.Ct. at 465. Corollary benefits are provided by the fact that the rule diminishes the likelihood of appeal premised upon ineffective assistance of counsel. In addition, the rule establishes a standard of review that is free from any factual speculation.

Third, and perhaps most important, the rule better ensures that all defendants will be fully apprised of their constitutional right to be represented by an attorney free of any conflict of interest. It demands that the trial court discuss with them the problems inherent in multiple representation, and assures a knowing choice if the defendant elects to proceed with an attorney who is representing another defendant.

▮ Touching briefly on some of the other issues raised by Shongutsie, we are satisfied that, in this instance, the prosecution did not suppress any information that was helpful in conducting cross-examination so as to deprive Shongutsie of due process of law. The prosecutor did offer the entire investigative file of the law enforcement officers to counsel for Shongutsie. The material about which complaint is made apparently was not in the possession of the prosecutor, but was present in the investigative file. We cannot accept an argument that anything was hidden by the State when the opportunity to examine it was present.

▮ With respect to the joinder of the charges for trial, they clearly did arise out of the same circumstance. The same evidence would be used in all cases. We accept the position of the trial judge that, in the exercise of discretion, the cases properly could be joined for trial, particularly in light of the preference expressed by Shongutsie that they be tried jointly if his case otherwise would be tried first. Certainly, there was no error on the part of the trial judge in declining to let Shongutsie select the order in which the cases should be tried.

One final matter requires our attention. The record is clear that the trial judge ordered Shongutsie to pay $39,300 as victim restitution pursuant to Wyo.Stat. §§ 7–9–101—112 (1987). Shongutsie urges the proposition that this order was inappropriate absent a finding by the trial court that he was, or would become, able to pay restitution. Sections 7–9–101—112 were somewhat ambiguous with respect to the duty of the trial court to determine a defendant's ability to pay prior to ordering victim restitution in connection with the impo-

sition of sentence. *See* Wyo.Stat. § 7–9–103 (1987); *Seaton v. State*, 811 P.2d 276 (Wyo.1991). This ambiguity has been addressed recently by the legislature of the State of Wyoming and, effective July 1, 1991, § 7–9–103 specifically requires that the trial judge find "ability to pay" or "reasonable probability" of ability to pay prior to requiring restitution. The record in this case does not disclose that the trial court made any specific findings of fact regarding Mr. Shongutsie's present or prospective ability to pay restitution. Under the amendment to the statute, such findings must be made if Mr. Shongutsie is found guilty of homicide at a new trial.

In summary, we recognize a presumption that Shongutsie was prejudiced by the multiple representation which was undertaken in the trial court. In the absence of a demonstration on the record that Shongutsie knowingly and voluntarily waived his right to be represented by an attorney free of conflict of interest, the judgment against Shongutsie must be reversed. The case is reversed and remanded to the district court for further proceedings in accordance with this opinion.

CARDINE, J., and BROWN, J., Ret., filed dissenting opinions.

CARDINE, Justice, dissenting.

This is a troubling case. Rebecca Shongutsie and Lindberg Shongutsie were husband and wife. They were charged separately in the killing of Richard Ferris. They employed an attorney to represent them in their defense at their joint trial. The possibility of conflict of interest resulting from a single attorney representing two defendants in the joint trial was discussed. The Shongutsies made no objection, but chose to proceed.

The majority opinion recites the question-and-answer cross-examination of Rebecca Shongutsie as an illustration of the prejudice resulting from the joint representation. I cannot discern prejudice resulting from her answers. She responded in the negative to every leading question where a yes answer would have been harmful to herself and her co-defendant. Her answers would exonerate both defendants.

I see merit in the rule adopted by the majority of the court. It is simple, clear-cut, and easy of application. Multiple parties may still be represented by one counsel, but they must clearly and voluntarily waive the right to separate counsel. Prejudice is presumed in such cases. The parties must be advised of the right to separate counsel and, on the record, make their election. I would, however, first, apply the rule prospectively and, second, would affirm this case because, even if prejudice were presumed, no prejudice was shown.

BROWN, Justice (Retired), dissenting.

The majority opinion is well written and generally contains sound law and logical reasoning. The small flaw in the opinion, as I see it, is that it deals with a different case than the one on appeal before this court. The majority address circumstances where the trial judge assigns an attorney to represent two or more defendants in the same case, and such dual representation results in prejudice.

In the case before this court, two defendants employed and chose, I repeat, chose, to be represented by the same attorney. Furthermore, there is not the slightest indication that either defendant was prejudiced by this dual representation or that there was a conflict of interest. The majority opinion does not cite a single case from any jurisdiction that addresses the same circumstances existing in this case.

Absent special circumstances, therefore, trial courts may assume either that multiple representation entails no conflict or that the lawyer and his clients knowingly accept such risk of conflict as may exist. Indeed, as the Court noted in *Holloway [v. Arkansas*, 435 U.S. 475] at 485–486 [98 S.Ct. 1173, 1179–80, 55 L.Ed.2d 426 (1978)], trial courts necessarily rely in large measure upon the good faith and good judgment of defense counsel. "An 'attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest

exists or will probably develop in the course of a trial.'" Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry.

*Cuyler v. Sullivan,* 446 U.S. 335, 346–47, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980) (citations omitted). This court should adopt the rule in *Cuyler.*

Suppose a different scenario in the case before us. Suppose the trial judge had refused to allow the lawyer employed by defendant to represent him and appointed another lawyer. If the defendant were then convicted, there would be a mighty weeping, wailing, and gnashing of teeth, complaining that defendant had been denied counsel of his choice as guaranteed by the constitution. How would the majority of this court handle the dilemma that it is backing itself into? The majority here is saying that the trial judge must assume the role of big brother, act as counsel, and determine what is best for a defendant, even if it means not allowing him to be represented by counsel of his choice.

At trial, Rebecca Shongutsie, wife of appellant, was called to testify by defense counsel. In the majority opinion, an exchange between the prosecuting attorney and Mrs. Shongutsie on cross-examination is set out. Apparently the majority cites this exchange as an example of prejudice to appellant. In the exchange, if "we" includes appellant, and I suppose it does, then Mrs. Shongutsie's testimony not only exonerated her but also the appellant. There is not one word in this exchange that would inculpate appellant by any stretch of the imagination.

It might be suspected that the majority had a predilection to reverse this case; it employed federal law that arguably supported its position and held contrary to federal law that would have upheld the trial court. According to the majority opinion, "federal cases establish that the trial court is under no affirmative obligation to inquire into the possibility of conflict of interest unless it 'knows or reasonably should know that a particular conflict ex-

ists.' *Cuyler,* 446 U.S. at 347, 100 S.Ct. at 1717." At 365–366.

The majority here rejected the analysis of *Cuyler* and other Supreme Court cases, and adopted a rule more favorable to the criminal defendant:

[P]rejudice will be presumed in all instances of multiple representation of criminal defendants and, in the absence of an appropriate waiver, multiple representation will constitute reversible error.

At 367.

After announcing the rule just indicated, the majority opinion details what the trial judge must do. The judge must, in effect, talk defendants out of being represented by the same attorney. They can only be represented by the same attorney if they "insist." As indicated earlier, the majority places a more arduous burden on the trial court with respect to dual representation than the United States Supreme Court requires.

This is not the first time the Wyoming Supreme Court has made prosecution more difficult than the United States Supreme Court requires. For approximately twenty years before the mid-1970's, the United States Supreme Court wreaked havoc on criminal prosecution. They worked overtime to find ways to reverse a conviction and to discover so-called rights of defendants that no one had ever dreamed of before. The United States Supreme Court recovered from this reversalitis in the mid-1970's, but the Wyoming Supreme Court was already infected. Of comparatively recent date, the Wyoming Supreme Court has exhibited more enthusiasm than even the United States Supreme Court in reversing criminal convictions. In *Westmark v. State,* 693 P.2d 220, 222 (Wyo.1984) (Brown, J., specially concurring), the court reinstated a rule that any comment on, or allusion to, the accused's right to remain silent, however innocuous or inadvertent, resulted in an automatic reversal. The United States Supreme Court would not do that. *See United States v. Hastings,* 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983). The United States Supreme Court held that an accused is not entitled to a

jury trial for petty offenses. *Frank v. United States,* 395 U.S. 147, 148, 89 S.Ct. 1503, 1505, 23 L.Ed.2d 162 (1969). However, the Wyoming Supreme Court held that they were. *See Brenner v. City of Casper,* 723 P.2d 558, 561 (Wyo.1986) (Brown, J., dissenting). In *Phillips v. State,* 774 P.2d 118, 122 (Wyo.1989) (Thomas and Golden, JJ., dissenting), and *Harvey v. State,* 774 P.2d 87, 93–94 (Wyo.1989) (Thomas and Golden, JJ., dissenting), the Wyoming Supreme Court placed time limits on criminal prosecution much shorter than any time limit imposed by the United States Supreme Court.

I do not have much enthusiasm for reversing the trial court by imposing rules more arduous than required by the United States Supreme Court. Imposing federal procedure rules (F.R.Cr.P. 44(e)) on the trial courts by opinion rather than by regular rule-making process is not entirely unreasonable, but it should be prospective and should not apply to this case.

I would affirm the trial court.