# IN THE SUPREME COURT, STATE OF WYOMING

# 2024 WY 71

## APRIL TERM, A.D. 2024

## July 1, 2024

ANDREW JAMES KELLER,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-23-0164, 0281

*Appeal from the District Court of Natrona County*
The Honorable Daniel L. Forgey, Judge

*Representing Appellant:*
   *Pro se.*

*Representing Appellee:*
   Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General.

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**JAROSH, Justice.**

[¶1]    Andrew James Keller pleaded guilty to one count of conspiracy to deliver methamphetamine.  Mr. Keller, who appears pro se, claims the district court erred by denying his presentence motion to withdraw his guilty plea under Wyoming Rule of Criminal Procedure (W.R.Cr.P.) 32(d) and his subsequent Wyoming Rule of Appellate Procedure (W.R.A.P.) 21 motion to withdraw his guilty plea and for a new trial for ineffective assistance of counsel.  His arguments largely involve assertions his public defenders had conflicts of interest and did not provide reasonably competent assistance.  We affirm.

## ISSUES

[¶2]    To facilitate a straightforward discussion of this case, we restate and reorder Mr. Keller's issues as:

> 1.    Did the district court err by denying Mr. Keller's W.R.A.P. 21 motion to withdraw his guilty plea and for a new trial because his counsel was ineffective?
>
> 2.    Did the district court abuse its discretion by denying Mr. Keller's presentence motion to withdraw his guilty plea?

## FACTS

[¶3]    In 2021 and 2022, the Wyoming Division of Criminal Investigation (DCI) investigated a large-scale methamphetamine and fentanyl distribution enterprise in Natrona County.  Through confidential sources (CS) and confidential informants (CI),[1] DCI agents identified Mr. Keller as a drug distributor and began electronic and physical surveillance of his property in Mills.  The investigation revealed Mr. Keller procured large quantities of controlled substances, which he divided into smaller amounts and sold.

[¶4]    In early March 2022, law enforcement stopped and searched two vehicles leaving Mr. Keller's property; the vehicles contained over 61 grams of methamphetamine and 23 fentanyl pills.  Law enforcement later executed a search warrant on Mr. Keller's property, where they "located thousands of dollars in United States Currency, as well as misdemeanor quantities of methamphetamine, packaging materials consistent with controlled substance . . . distribution, video monitoring equipment[,] and firearm

---

[1] A DCI agent explained that a CS "provides [investigative] information" to law enforcement, while a CI is "directed" by law enforcement to perform certain actions as part of the investigation.  *See, e.g.*, *Rohda v. State,* 2006 WY 120, ¶ 10, 142 P.3d 1155, 1161 (Wyo. 2006) (CS provided information to law enforcement that the defendant was tied to illegal drug trade); *Reyes v. State,* 2022 WY 41, ¶¶ 3-9, 505 P.3d 1264, 1265-66 (Wyo. 2022) (law enforcement directed a CI to perform controlled buys of drugs).

1

ammunition." Mr. Keller was arrested and charged with two counts of felony conspiracy to deliver a controlled substance, in violation of Wyo. Stat. Ann. §§ 35-7-1042 and 35-7-1031(a)(i) (LexisNexis 2023).

[¶5]    Mr. Keller refused appointment of counsel at his initial appearance in the Natrona County circuit court on March 21, 2022. However, two days later he filed an affidavit of indigency and requested counsel. The circuit court appointed the Natrona County Public Defender's (NCPD) office to represent Mr. Keller, and Senior Assistant Public Defender Kurt Infanger (PD Infanger) was assigned to the case. PD Infanger represented Mr. Keller at his preliminary hearing, where he was bound over to the district court for trial on the two felony charges.

[¶6]    On June 15, 2022, PD Infanger appeared with Mr. Keller at his arraignment in the district court, and Mr. Keller pleaded not guilty to both charges. Toward the end of the hearing, PD Infanger informed the district court that "Mr. Keller brought up an individual that I had represented here recently, . . . and I believe that could potentially create a conflict to where I don't think it would be appropriate for me to continue on with my representation of Mr. Keller." PD Infanger planned to talk with his supervisor at the NCPD's office later that day "about reassigning Mr. Keller's case." He explained to the district court, the "problem [the NCPD office has] run into is there's been such an enormous amount of people that have been charged in this grand-scheme of things that the majority of . . . these defendants[] have been assigned public defenders from outside of our jurisdiction and I anticipate that will probably take place in Mr. Keller's case." Mr. Keller expressed his concern that information about his case was "getting outside" the NCPD's office and asserted all the attorneys in the office had conflicts of interest. The district court acknowledged the concern and the fact that defense counsel may not have been initially aware of a conflict of interest because of the number of individuals involved in the case. However, it decided substitution of counsel would resolve any potential conflict.

[¶7]    On July 1, 2022, PD Infanger moved to withdraw, and Damon DeBernardi, a contract public defender from Rock Springs (PD DeBernardi), entered his appearance on behalf of Mr. Keller. A few weeks later, the parties entered into a plea agreement whereby Mr. Keller agreed to plead guilty to one count of conspiracy to deliver methamphetamine in exchange for the State dismissing the other count, and the parties agreed to a "five-year cap" on Mr. Keller's sentence. The plea agreement included a "cold plea" provision, which stated that if Mr. Keller violated the law or any condition of his bond, the State would no longer be bound by the agreement, the court could sentence up to the maximum penalty, and Mr. Keller would not be allowed to withdraw his plea.

[¶8]    The district court held Mr. Keller's change of plea hearing on September 21, 2022. Mr. Keller stated he understood the plea agreement and entered into it "willingly, knowingly, and voluntarily." He said he had discussed the agreement with PD DeBernardi and was satisfied with his representation. Mr. Keller also provided a factual basis for his

2

guilty plea. After the district court accepted Mr. Keller's plea, PD DeBernardi persuaded the court to reduce Mr. Keller's bond. Mr. Keller posted bond later that day and was released pending sentencing. A few months later, the State filed a motion to revoke Mr. Keller's bond after he was arrested and charged with three additional drug crimes related to his conduct while out on bond (Second Case). The State also sought to invoke the "cold plea" provision of the plea agreement in this case.

[¶9]    On March 1, 2023, PD DeBernardi informed the court that his public defender contract was expiring, necessitating substitution of counsel for Mr. Keller. Two weeks later, Marty Scott with the NCPD's Office (PD Scott) entered his appearance. At a hearing on April 26, 2023, PD Scott informed the district court that Mr. Keller was not satisfied with his representation. Mr. Keller felt PD Scott had a conflict of interest because he had represented "the informants," although Mr. Keller did not identify any such informants. PD Scott said he was not "aware of any particular conflict [in] this case" and believed he could represent Mr. Keller at sentencing. The district court did not address the issue at that time.

[¶10]  Mr. Keller subsequently filed a pro se motion requesting a change of representation from PD Scott. He said "[i]f the [NCPD's] [o]ffice is my only option [for appointed counsel,] I request to be acknowledged as a PRO-SE Attorney." The district court held a hearing on Mr. Keller's motion on May 15, 2023. Mr. Keller denied he ever requested a court-appointed attorney and asked to represent himself. He argued the entire NCPD's office was conflicted and should never have been appointed to represent him because attorneys in the office also represented people who were informants in the conspiracy case against him. He also asserted the attorneys were sharing confidential information with one another and "leaking" it to the "informants" and DCI.

[¶11]  PD Scott replied that Mr. Keller declined court-appointed representation in the Second Case, not this one. However, given Mr. Keller was unequivocally stating he no longer wanted a public defender in this case, PD Scott said the district court should allow him to represent himself. Addressing Mr. Keller's conflict of interest claim, PD Scott stated that although the NCPD's office had a policy "to very meticulously avoid any conflict of interest," the identities of some of the CSs and CIs were unknown to it. As a result, an appointed attorney could have a conflict without realizing it. PD Scott explained that if a public defender became aware of a conflict of interest while representing a client, the practice was to "immediately withdr[a]w and [be] replaced with another attorney within our office who did not have that conflict." PD Scott expressly denied the public defenders improperly shared confidential information about their clients with others. The NCPD office supervisor and the State Public Defender also testified about office policies to ensure conflict-free representation of indigent defendants. All three public defenders stated they did not believe PD Scott had a conflict of interest which would prevent him from representing Mr. Keller at his sentencing.

3

[¶12] The district court ruled:

> On this record, I don't see a sufficient basis that would require me to substitute a different public defender for you at this time. I don't see a sufficient, ethical issue that's been specifically identified that would require me to do that. . . . [T]he law does not allow you to pick your public defender. . . . So there would not be . . . a different public defender[] assigned to your case. That would leave you with continuing with your existing representation or deciding to represent yourself[.]

[¶13] Mr. Keller elected to proceed pro se, and the district court conducted a hearing under *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), to ensure he "intentionally, knowingly, and voluntarily waiv[ed] his right to counsel, and to advise him 'of the dangers and disadvantages of self-representation, so that the record . . . establish[ed] that he kn[ew] what he [was] doing and his choice [was] made with eyes open.'" *Vlahos v. State,* 2022 WY 129, ¶ 24 n.3, 518 P.3d 1057, 1065 n.3 (Wyo. 2022) (quoting *Reifer v. State*, 2014 WY 139, ¶¶ 15-16, 336 P.3d 1214, 1217 (Wyo. 2014), and *Faretta*, 422 U.S. at 835, 95 S. Ct. at 2541). After the *Faretta* hearing, the district court allowed Mr. Keller to represent himself.

[¶14] Mr. Keller then filed a pro se motion to withdraw his guilty plea. In general, he claimed: 1) PDs Infanger and Scott should not have been appointed to represent him because they had conflicts of interest; 2) he had no opportunity to review discovery; 3) the evidence against him was insufficient, "manipulat[ed]," and changed over time; and 4) the prosecutor tried to "ambush" him by invoking the "cold plea" provision. After a hearing, the district court denied the motion, concluding Mr. Keller did not establish a fair and just reason to withdraw his guilty plea under Rule 32(d) and *Frame v. State,* 2001 WY 72, 29 P.3d 86 (Wyo. 2001).

[¶15] The court proceeded to sentencing. The State presented evidence showing it was entitled to invoke the "cold plea" provision of the plea agreement because Mr. Keller violated its terms, and the district court concluded the State established a sufficient basis to invoke the provision. However, the court rejected the State's argument that Mr. Keller should serve the maximum sentence of 14 to 20 years in prison and, instead, sentenced him to a prison term of six to nine years. Mr. Keller filed a timely notice of appeal challenging the district court's refusal to allow him to withdraw his guilty plea. That appeal was docketed as S-23-0164.

[¶16] Mr. Keller then filed a motion to withdraw his guilty plea and for a new trial under W.R.A.P. 21, claiming he received ineffective assistance from his three defense attorneys. At the hearing on his Rule 21 motion, Mr. Keller alleged many facts in support of his claim he received ineffective assistance of counsel, but he did not present any evidence. The

4

district court subsequently denied Mr. Keller's Rule 21 motion and issued findings of fact and conclusions of law in support of its decision. He appealed that order in S-23-0281. We consolidated Mr. Keller's two appeals for briefing and decision.

## STANDARDS OF REVIEW

[¶17] "'Claims of ineffective assistance of counsel involve mixed questions of law and fact[.]'" *Weston v. State,* 2019 WY 113, ¶ 34, 451 P.3d 758, 768 (Wyo. 2019) (quoting *Hibsman v. State*, 2015 WY 122, ¶ 14, 355 P.3d 1240, 1244 (Wyo. 2015)) (other citation omitted). We accept the district court's findings of fact unless they are clearly erroneous but review the district court's conclusions of law de novo. *Mellott v. State,* 2019 WY 23, ¶ 11, 435 P.3d 376, 382 (Wyo. 2019) (citing *Griggs v. State,* 2016 WY 16, ¶ 37, 367 P.3d 1108, 1124 (Wyo. 2016), and *Cooper v. State,* 2014 WY 36, ¶ 20, 319 P.3d 914, 920 (Wyo. 2014)); *Delgado v. State*, 2022 WY 61, ¶ 13, 509 P.3d 913, 919 (Wyo. 2022). The ultimate determinations of whether counsel's conduct was deficient and whether the appellant was prejudiced by the deficient conduct are questions of law. *Delgado,* ¶ 13, 509 P.3d at 919 (citing *Sides v. State,* 2021 WY 42, ¶ 34, 483 P.3d 128, 137 (Wyo. 2021)).

[¶18] District courts have discretion under W.R.Cr.P. 32(d) in determining whether to allow a defendant to withdraw his guilty plea prior to sentencing. *Frame,* ¶ 7, 29 P.3d at 89. We review the district court's denial of a criminal defendant's motion to withdraw his plea for abuse of discretion. *Wanberg v. State,* 2020 WY 75, ¶ 14, 466 P.3d 269, 273 (Wyo. 2020). "The core of our inquiry is the reasonableness of the district court's decision." *Delgado,* ¶ 26, 509 P.3d at 923 (citing *Russell v. State,* 2013 WY 137, ¶ 9, 312 P.3d 76, 78 (Wyo. 2013), and *Jackson v. State,* 2012 WY 56, ¶ 6, 273 P.3d 1105, 1107 (Wyo. 2012)). "'A court abuses its discretion only when it could not reasonably decide as it did.'" *Wanberg,* ¶ 14, 466 P.3d at 273 (quoting *Steffey v. State*, 2019 WY 101, ¶ 17, 449 P.3d 1100, 1105 (Wyo. 2019)). "In conducting our review, we accept the district court's findings of fact unless they are clearly erroneous." *Delgado,* ¶ 26, 509 P.3d at 923 (citing *Russell,* ¶ 9, 312 P.3d at 78, and *Dobbins v. State,* 2012 WY 110, ¶ 30, 298 P.3d 807, 815 (Wyo. 2012)).

## DISCUSSION

### A. W.R.A.P. 21 - Ineffective Assistance of Counsel

[¶19] The Sixth Amendment to the United States Constitution and Art. 1, § 10 of the Wyoming Constitution guarantee a person accused of a crime effective assistance of counsel. "To demonstrate defense counsel was ineffective, the appellant must show counsel's performance was deficient and the deficient performance prejudiced his defense." *Delgado*, ¶ 12, 509 P.3d at 919 (citing *Griggs,* ¶ 36, 367 P.3d at 1124; *Cooper,* ¶¶ 19-20, 319 P.3d at 920; and *Strickland v. Washington,* 466 U.S. 668, 690-91, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984)). "If the appellant fails to make the required showing

of either deficient performance or prejudice, he cannot establish defense counsel was ineffective." *Id.* (citing *Weston*, ¶ 35, 451 P.3d at 768, and *Osborne v. State,* 2012 WY 123, ¶ 19, 285 P.3d 248, 252 (Wyo. 2012)). "'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process'" that the proceedings cannot be relied upon as "'having produced a just result.'" *Grainey v. State*, 997 P.2d 1035, 1039 (Wyo. 2000) (quoting *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064)). "The right to effective counsel encompasses the correlative rights" that counsel be "free from conflicts of interests" and "reasonably competent." *Shongutsie v. State,* 827 P.2d 361, 364 (Wyo. 1992), *receded from on other grounds by Murray v. State,* 855 P.2d 350, 358 (Wyo. 1993).

[¶20] Mr. Keller claims PDs Infanger and Scott performed deficiently because they had conflicts of interest. He also asserts PD Infanger's performance at the preliminary hearing was inadequate and PD DeBernardi did not perform as reasonably competent defense counsel while representing him. Because Mr. Keller claims ineffective assistance of counsel based on both conflicts of interest and incompetent representation, we will address each basis separately.

## 1. Conflicts of Interest

[¶21] In general, a criminal defense attorney who has a conflict of interest "might not" provide adequate assistance to his client. *Asch v. State,* 2003 WY 18, ¶ 13, 62 P.3d 945, 950-51 (Wyo. 2003). Potential for a conflict of interest exists if one attorney jointly represents two criminal defendants charged with the same or a related crime without obtaining their informed consent. *Asch,* ¶¶ 13-14, 62 P.3d at 951.

[¶22] *Shongutsie* is generally considered the seminal case in Wyoming regarding joint representation of co-defendants. Shongutsie and his wife were tried in a joint trial for murder and aggravated assault, respectively, with a single defense attorney representing both of them. *Shongutsie,* 827 P.2d at 363. A clear conflict of interest developed between the defendants during the trial, and Shongutsie was convicted. *Id.* at 366. On appeal, we held the attorney's joint representation of the defendants violated Shongutsie's right to conflict-free representation under the Sixth Amendment. *Id.* at 366-67.

[¶23] We explained that joint representation creates an inherent potential for a conflict of interest:

> Joint representation of conflicting interests is suspect because of what it tends to prevent the attorney from doing. For example, . . . [joint representation] may well . . . preclude[ ] defense counsel . . . from exploring possible plea negotiations and the possibility of an agreement to testify for the prosecution, provided a lesser charge or a favorable sentencing

6

recommendation would be acceptable. Generally speaking, a conflict may also prevent an attorney from challenging the admission of evidence prejudicial to one client but perhaps favorable to another, or from arguing . . . the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another. Examples can be readily multiplied.

*Id.* at 365 (citing *Holloway v. Ark.,* 435 U.S. 475, 489-90, 98 S.Ct. 1173, 1181-82, 55 L.E.2d 426 (1978)) (quotation marks omitted). *See also, Asch,* ¶ 31, 62 P.3d at 954 (the danger of joint representation is that an attorney might not be able to adequately represent "two masters"). Defense counsel's joint representation of Shongutsie and his wife was presumed to be prejudicial, and reversal of his conviction was required because he did not waive his right to conflict-free representation. *Id.* at 367. We also prescribed a process to ensure co-defendants received effective representation of counsel through separate attorneys or effectively waived their rights to conflict-free representation. *Id.*

[¶24] This Court also adopted W.R.Cr.P. 44(c) to govern joint representation of criminal defendants. Rule 44(c) states:

> (c) *Joint representation.* – Whenever two or more defendants have been charged with offenses arising from the same or related transactions and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict of interest is likely to arise, the court shall order separate representation.

[¶25] In *Asch,* we explained Rule 44(c) "provides an effective mechanism for dealing with potential conflicts of interest in cases of multiple representation," and addressed application of the rule when different attorneys from the same public defender's office represent defendants in related actions. ¶¶ 13-34, 62 P.3d at 950-55. Asch was a passenger in Sutton's car when they were pulled over by law enforcement and arrested on drug possession charges. *Id.,* ¶ 4, 62 P.3d at 948. The court appointed an attorney from the public defender's office to represent Sutton and counsel from outside the public defender's office to represent Asch. *Id.,* ¶¶ 6, 12, 62 P.3d at 949-50. Asch's appointed attorney was unable to appear at his preliminary hearing, so an attorney from the public defender's office represented Asch at that hearing. *Id.* The public defender who appeared for Asch did not know Sutton was represented by another attorney in the same office. *Id.,* ¶ 31, 62 P.3d at

7

954. After Asch was convicted, he claimed he received ineffective assistance of counsel because a conflict of interest existed when attorneys from the same public defender's office briefly represented both him and Sutton. *Id.,* ¶¶ 10, 12, 62 P.3d at 949-50.

[¶26] We acknowledged that Rule 44(c) requires courts to consider conflicts of interest "not only where co-defendants are represented by the same attorney, but also where they are represented by 'retained or assigned counsel who are associated in the practice of law.'" *Id.,* ¶ 16, 62 P.3d at 951-52 (quoting W.R.Cr.P. 44(c)). Although attorneys in a public defender's office are to some degree "associated in the practice of law," we "found a case-by-case inquiry, rather than *per se* disqualification" under *Shongutsie*, appropriate when a conflict of interest is alleged by co-defendants represented by separate attorneys from a public defender's office. *Id.,* ¶¶ 21, 27, 62 P.3d at 953-54.

[¶27] We concluded the attorney who briefly represented Asch at the preliminary hearing did not have a conflict of interest because he was "not even aware" Sutton was being represented by another attorney in the public defender's office. *Id.,* ¶ 31, 62 P.3d at 954 ("If multiple representation can be seen as an attempt to serve two masters, then there was no conflict of interest here because [the attorney] was not even aware that there were two masters to serve."). The attorney also testified he did not recall ever talking to Sutton's attorney about the case. *Id.,* ¶ 32, 62 P.3d at 954. Consequently, he did not obtain any information during the preliminary hearing that "was used to Sutton's advantage or Asch's disadvantage." *Id.*

[¶28] Although *Bolin v. State,* 2006 WY 77, 137 P.3d 136 (Wyo. 2006), was not a joint representation case under W.R.Cr.P. 44(c), it is germane to our discussion because Bolin raised conflict of interest concerns similar to Mr. Keller's. The public defender who represented Bolin during his trial on delivery of marijuana charges moved to withdraw prior to sentencing because "a conflict had arisen." *Bolin,* ¶ 19, 137 P.3d at 143. Bolin filed motions requesting the court disqualify the entire public defender's office and appoint substitute counsel from outside the office. *Id.,* ¶ 20, 137 P.3d at 143. He was apparently concerned about preserving the confidentiality of his information and/or another public defender taking a position adverse to him. *Id.,* ¶ 28, 137 P.3d at 146. The district court found no grounds for disqualification of the entire public defender's office and stated, although Bolin "had the right to be represented by a public defender[, he] did not have the right to court appointed counsel of his own choice." *Id.,* ¶ 21, 137 P.3d at 143. The district court gave Bolin the choice of a substitute attorney from the public defender's office or appearing at sentencing without counsel. *Id.* He chose to proceed pro se. *Id.*

[¶29] On appeal, we acknowledged that Rule 1.10(a) of the Rules for Professional Conduct for Attorneys at Law, much like W.R.Cr.P. 44(c), generally restricts an attorney from accepting representation of a client when an associated attorney has a conflict of interest. *Id.,* ¶ 23, 137 P.3d at 144 (citing Wyo. R. Prof. Conduct 1.10(a) ("[w]hile lawyers are associated in a firm, none of them shall knowingly represent a client when any one (1)

8

of them practicing alone would be prohibited from doing so . . .")). Nevertheless, under the principles discussed in *Asch*, automatic disqualification of the entire public defender's office was not required simply because Bolin's former public defender had a conflict of interest. *Id.,* ¶ 28, 137 P.3d at 146. In reaching our conclusion, we noted Bolin did not establish: 1) his substitute public defender had an actual conflict of interest; 2) he would be "substantially prejudiced by the appointment of another public defender"; 3) the public defender's office failed to preserve the confidentiality of his information; or 4) the substitute public defender took a position adverse to him. *Id.* We also stated "[a]bsent some argument and evidence to the contrary, we presume the public defender's office has in place a detailed screening procedure for avoiding conflicts and the appearance of impropriety." *Id.*

[¶30] With this precedent in mind, we turn to Mr. Keller's specific claims regarding PDs Infanger and Scott.

### 1(a)    Conflict of Interest – PD Infanger

[¶31] Mr. Keller asserted PD Infanger performed deficiently because he represented another defendant in the drug conspiracy named Ronnie Morgan, and Mr. Morgan's interests conflicted with his. According to Mr. Keller, Mr. Morgan was one of the people stopped by law enforcement after leaving Mr. Keller's property in March 2022.[2] Although PD Infanger did not specifically state he represented Mr. Morgan, he admitted at the arraignment that Mr. Keller alerted him to a potential conflict of interest involving a client he "represented . . . recently" and promptly stated another attorney should be appointed to represent Mr. Keller. The district court agreed and appointed PD DeBernardi.

[¶32] The district court complied with Rule 44(c) by replacing PD Infanger with PD DeBernardi. *See generally, Wheat v. United States,* 486 U.S. 153, 161, 108 S.Ct. 1692, 1698, 100 L.Ed.2d 140 (1988) (an option under Fed.R.Crim.P. 44(c) for addressing a conflict of interest arising from an attorney's joint representation of criminal defendants is a court order requiring "the defendants be separately represented in subsequent proceedings in the case"). Although Mr. Keller asserts PD Infanger should have realized the potential conflict before he accepted representation of Mr. Keller, he did not present any evidence supporting his assertion.[3] In fact, he conceded at the hearing on his motion to withdraw

---

[2] Mr. Keller alleged PD Infanger had additional conflicts of interest because he represented other defendants, CIs, and CSs involved in the drug conspiracy case. Mr. Keller did not adequately explain how the other people were related to his case and/or present any evidence to the district court showing that PD Infanger in fact represented them.

[3] Throughout his brief, Mr. Keller cites to certain "exhibits" as proof for his factual assertions, but he does not include citations to the designated record as required by W.R.A.P. 7.01(g)(1) (the appellant's brief must include his "contentions with respect to the issues presented and the reasons therefor, with citations to the authorities, statutes and pages of the designated record on appeal relied on"). Presumably, he is referring to the "supplemental exhibits" he attempted to file with this Court as an adjunct to his opening brief. The

9

his guilty plea that the affidavit of probable cause in his case did not mention Mr. Morgan. PD Infanger, PD Scott, and the district court commented on the difficulty of recognizing conflicts because of the number of people involved in the drug distribution conspiracy, many of whom were identified only by CI or CS numbers, and the fact that the situation was "fluid" with "additional people [being] charged at different times." PD Scott, the NCPD supervisor, and the State Public Defender stated the NCPD office has policies and procedures in place to identify conflicts and performs a conflict check with the best information available when a public defender is assigned to a case. Unlike in *Shongutsie,* PD Infanger and the district court took prompt action once the potential conflict came to light and arranged for PD DeBernardi to enter his appearance as substitute counsel for Mr. Keller.

[¶33] Furthermore, PD Infanger's role in Mr. Keller's case was limited to appearing at the preliminary hearing and arraignment. Mr. Keller did not present any proper evidence about the dates PD Infanger represented Mr. Morgan or demonstrate how such representation related to the timing of Mr. Keller's preliminary hearing. He also did not present evidence showing PD Infanger recognized a potential conflict of interest between Mr. Keller and Mr. Morgan at the time of the preliminary hearing or demonstrating PD Infanger's representation of Mr. Morgan adversely affected his performance at Mr. Keller's preliminary hearing. After the potential conflict of interest came to light at Mr. Keller's arraignment, the district court resolved it consistent with W.R.Cr.P. 44(c). Mr. Keller admitted Mr. Morgan's case was resolved, and hence, PD Infanger's representation of him ended, before Mr. Keller's arraignment in June 2022. Moreover, Mr. Keller did not present any evidence supporting his allegation that the attorneys in the NCPD office were sharing confidential information with each other or DCI. *See Bolin,* ¶ 28, 137 P.3d at 146. Mr. Keller failed to establish PD Infanger performed deficiently because of a conflict of interest from his representation of another participant in the conspiracy.

### 1(b)    Conflict of Interest – PD Scott

[¶34] Mr. Keller claims PD Scott had a conflict of interest because he was employed by the NCPD's office which employed other attorneys who represented co-defendants and/or informants involved in the same drug conspiracy and PD Scott possibly represented some of the informants at some undetermined time. When Mr. Keller objected to PD Scott's appointment, the district court was required to conduct a hearing in accordance with Rule 44(c) and *Asch,* which it did. During the hearing, Mr. Keller did not present evidence

Clerk of Court rejected the "supplemental exhibits" for filing because under W.R.A.P. 3.01(b) and 3.04 the record on appeal includes only the designated portions of the official district court record and materials permitted by court order to supplement the official record. *See TEP Rocky Mountain LLC v. Rec. TJ Ranch,* 2022 WY 105, ¶ 64, 516 P.3d 459, 478 (Wyo. 2022) ("items attached to a brief are not considered part of the record on appeal"); *Hodson v. Sturgeon*, 2017 WY 150, ¶¶ 5-7, 406 P.3d 1264, 1265 (Wyo. 2017) (under the Wyoming Rules of Appellate Procedure, a party cannot supplement the record on appeal by attaching exhibits to his brief).

demonstrating PD Scott had an actual conflict of interest, confidential information was improperly shared within the NCPD office, or PD Scott took a position adverse to him. *Asch,* ¶¶ 31-32, 62 P.3d at 954; *Bolin,* ¶ 28, 137 P.3d at 146. Under these circumstances, Mr. Keller did not establish PD Scott provided inadequate representation based on a conflict of interest.

## 2. Inadequate Performance

[¶35]  When a defendant claims he received ineffective assistance of counsel because his lawyer was incompetent, he must overcome a strong presumption that counsel provided adequate assistance and properly exercised his professional judgment when making decisions about the case. *Mills v. State,* 2023 WY 76, ¶ 18, 533 P.3d 182, 189 (Wyo. 2023); *Lemley v. State,* 2016 WY 65, ¶ 13, 375 P.3d 760, 764 (Wyo. 2016). "To establish counsel's performance was deficient, the defendant must show that 'counsel failed to render such assistance as would have been offered by a reasonably competent attorney.'" *Griggs,* ¶ 36, 367 P.3d at 1124 (quoting *Cooper*, ¶ 19, 319 P.3d at 920).

### 2(a)  Inadequate Performance – PD Infanger

[¶36]  Mr. Keller claims PD Infanger's performance during the preliminary hearing was inadequate because he did not "question every allegation [in the probable cause] affidavit" or "challeng[e] the admission of evidence" and he wrongly suggested the "case was going federal." The district court found Mr. Keller failed to produce "any specific or persuasive evidence" to support his assertions.

[¶37]  The district court accurately recounted the dearth of record evidence regarding the preliminary hearing. Mr. Keller did not provide a transcript or recording of the proceeding in accordance with W.R.Cr.P. 5.1(d) or prepare a "statement of the evidence or proceeding[]" under W.R.A.P. 3.03. *See* W.R.Cr.P. 5.1(d) ("On timely application to the court, counsel for the parties shall be given an opportunity to have the recording of the [preliminary] hearing made available for their information in connection with any further proceedings . . . ."); W.R.A.P. 3.03 (Subject to the trial court's approval, the appellant may prepare a "statement of the evidence or proceedings from the best available means including appellant's recollection."). He also declined the district court's invitation to testify as a witness on his own behalf at the Rule 21 hearing and did not properly subpoena PD Infanger to testify at the hearing.[4] As such, Mr. Keller did not overcome the strong presumption that PD Infanger adequately represented him at the preliminary hearing.

---

[4] Mr. Keller stated at the Rule 21 hearing that he mailed subpoenas or "summonses" to his three defense attorneys to compel their attendance at the hearing. The district court informed him he could not serve subpoenas by mail and had to have them personally served. On appeal, Mr. Keller does not appropriately challenge the attorneys' absence from his Rule 21 hearing.

11

## 2(b)      Inadequate Performance – PD DeBernardi

[¶38] Mr. Keller asserts PD DeBernardi performed deficiently because he did not communicate with Mr. Keller, provide discovery to Mr. Keller in a "useable" format so he could help with the defense, properly review the discovery materials before advising Mr. Keller to plead guilty, or adequately investigate the case.

[¶39] A defendant can satisfy his obligation to show defense counsel performed inadequately with evidence the attorney did not sufficiently investigate the case. *Hodge v. State,* 2015 WY 103, ¶ 13, 355 P.3d 368, 372-73 (Wyo. 2015); *Frias v. State,* 722 P.2d 135, 145 (Wyo. 1986). Likewise, a defendant can demonstrate ineffectiveness by showing defense counsel's actions were not based "'on informed strategic choices'" made after consulting with the defendant and considering "'information supplied by the defendant.'" *Asch,* ¶ 40, 62 P.3d at 958 (quoting *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066). However, to meet this burden, the defendant must identify "the favorable evidence or witnesses that additional investigation would have revealed." *Asch,* ¶ 41, 62 P.3d at 959 (citing *Shipman v. State,* 2001 WY 11, ¶¶ 10-14, 17 P.3d 34, 37 (Wyo. 2001), and *Grainey,* 997 P.2d at 1040).

[¶40] Mr. Keller did not produce any evidence to support his complaints about PD DeBernardi's handling of his case. Mr. Keller made lengthy statements at the Rule 21 hearing about his dissatisfaction with PD DeBernardi but declined the district court's offer to allow him to testify as a witness. As a result, his statements were not sworn evidence. PD DeBernardi did not testify about the extent of his investigation or his strategic decisions because Mr. Keller did not properly subpoena him to appear at the hearing. Mr. Keller also failed to provide specific information about the evidence or witnesses PD DeBernardi would have discovered through further investigation. In short, Mr. Keller did not present any evidence to overcome the strong presumption that PD DeBernardi's representation of him was adequate.

[¶41] The record supports the district court's denial of Mr. Keller's W.R.A.P. 21 motion on the grounds that PDs Infanger, DeBernardi, and Scott provided adequate assistance of counsel. Given Mr. Keller failed to establish his attorneys' performance was deficient, it is unnecessary to address the second element of ineffective assistance of counsel, i.e., the effect of defense counsels' performance on the defense. *See Delgado,* ¶ 12, 509 P.3d at 919 (a failure to establish either element of ineffective assistance of counsel is dispositive).

## B.  W.R.Cr.P. 32(d) Motion to Withdraw Guilty Plea

[¶42]  W.R.Cr.P. 32(d) allows a defendant to withdraw a guilty plea prior to sentencing if he shows "any fair and just reason." *Delgado,* ¶ 25, 509 P.3d at 922. In general, "[a] fair and just reason includes inadequate plea colloquies, newly discovered evidence,

intervening circumstances, or other reasons that did not exist when the defendant entered the plea. The reason must be something more than the wish to have a trial, or belated misgivings about the plea." *Winsted v. State,* 2010 WY 139, ¶ 16, 241 P.3d 497, 501-02 (Wyo. 2010) (citing *United States v. Ortega–Ascanio,* 376 F.3d 879, 883 (9th Cir. 2004), and *State v. Jenkins,* 303 Wis.2d 157, 736 N.W.2d 24, 34 (2007)).

[¶43] In *Frame,* we recognized seven non-exclusive factors for courts to consider in determining whether, under Rule 32(d), a defendant established a fair and just reason to withdraw his plea. *Wanberg,* ¶ 16, 466 P.3d at 273 (citing *Frame*, ¶ 7, 29 P.3d at 89). The factors are:

> (1) whether the defendant has asserted his innocence; (2) whether the government would suffer prejudice; (3) whether the defendant has delayed in filing his motion; (4) whether withdrawal would substantially inconvenience the court; (5) whether close assistance of counsel was present; (6) whether the original plea was knowing and voluntary; and (7) whether the withdrawal would waste judicial resources.

*Frame,* ¶ 7, 29 P.3d at 89 (citations omitted). *See also, Delgado,* ¶ 27, 509 P.3d at 923 (the seven *Frame* factors are nonexclusive and "[n]o single factor is dispositive") (citations and some quotation marks omitted).

[¶44] The district court denied Mr. Keller's presentence motion to withdraw his guilty plea because he did not show a "fair and just reason" to justify withdrawal. In doing so, the district court decided the third, fifth, and sixth *Frame* factors weighed heavily against allowing Mr. Keller to withdraw his guilty plea, while "the other factors and evidence [were not] very persuasive or entitled to much weight in [the] analysis." Mr. Keller does not include in his appellate brief a separate argument addressing the district court's denial of his Rule 32(d) motion to withdraw his guilty plea. Although he lists the *Frame* factors in his appellate brief, he does not analyze them in the context of this case. Instead of making an argument based on Rule 32(d), the *Frame* factors, and relevant precedent, he maintains he should have been allowed to withdraw his plea because his counsel were ineffective. Given these circumstances and the applicable abuse of discretion standard, our discussion will focus on the three *Frame* factors the district court relied upon in its decision.

### 1. **Third *Frame* Factor – Delay in Filing Motion to Withdraw Plea**

[¶45] The district court concluded Mr. Keller substantially delayed filing his motion to withdraw his guilty plea. Mr. Keller waited 223 days after he pleaded guilty on September 21, 2022, until he filed his motion to withdraw his guilty plea on May 2, 2023. He argued the district court should excuse his delay because he did not have a mailbox for approximately 30 days during the 223-day period and "[he] was completely obstructed

13

from having access to [his] discovery" from March 1, 2023, until he filed his motion on May 2, 2023, a period of 62 days.

[¶46]  The district court correctly rejected Mr. Keller's argument because he submitted no evidence to support his claims and, even if it is true he was unable to file his motion to withdraw his plea for 92 days (the total amount of time he claims he did not have a mailbox or access to discovery materials), he still does not explain the other 131-day (over four-months) delay.  That delay was much longer than delays we previously agreed weighed against allowing the defendant to withdraw his guilty plea.  For example, in *Van Haele v. State,* 2004 WY 59, ¶ 33, 90 P.3d 708, 717 (Wyo. 2004), we accepted the district court's conclusion that the defendant substantially delayed filing his motion to withdraw his plea by waiting two months after entering the plea.  In *Winsted*, ¶¶ 11, 14, 17, 241 P.3d at 500-02, a six-week delay weighed against allowing the defendant to withdraw his guilty plea.

[¶47]  Mr. Keller also did not explain his delay by showing a change in circumstances between the time he entered his plea and when he filed his motion to withdraw.  For example, the defendant's delay in *Delgado* was not substantial because, even though he waited three months to seek withdrawal of his no contest plea, he filed the motion within a few days after receiving a medical record showing he was mentally ill when he committed the charged crime.  *Id.,* ¶¶ 37-39, 509 P.3d at 925-26.  Unlike Delgado, Mr. Keller did not make any effort to present "newly discovered evidence [or] intervening circumstances" to explain his delay in filing his motion to withdraw his plea.  *Winsted,* ¶ 16, 241 P.3d at 501-02.  There is no reason to disturb the district court's conclusion that Mr. Keller substantially delayed in filing his motion which weighed heavily against allowing him to withdraw his guilty plea.

### 2.  Fifth *Frame* Factor – Close Assistance of Counsel

[¶48]  The district court found Mr. Keller had the close assistance of counsel when he entered his plea.  Even when a defendant fails to prove he received ineffective assistance of counsel under the *Strickland* standard, he may still show he did not receive the close assistance of counsel when entering his guilty plea.  *Delgado,* ¶ 40, 509 P.3d at 926.  *See also, Steffey,* ¶ 33, 449 P.3d at 1108-09 ("While ineffective assistance of counsel 'may constitute a fair and just reason to grant a motion to withdraw,' *Frame*, ¶ 8, 29 P.3d at 89, we have never held a defendant must satisfy the *Strickland* standard in order to establish the fifth *Frame* factor.").  "Instead, the close assistance of counsel factor under *Frame*[] requires 'counsel's assistance to be adequate and available.'"  *Delgado,* ¶ 40, 509 P.3d at 926 (quoting *Steffey,* ¶ 35, 449 P.3d at 1109, which cited *Doles v. State*, 2002 WY 146, ¶ 22, 55 P.3d 29, 33 (Wyo. 2002)) (other citations omitted).  Circumstances that may support a finding the defendant did not receive the close assistance of counsel in entering his plea include when defense counsel refuses to meet with the defendant, ignores his requests, is unavailable to assist him, fails to communicate with him, or has a contentious relationship

with him. *Id.,* ¶ 41, 509 P.3d at 926 (discussing *Steffey,* ¶ 36, 449 P.3d at 1109, and *Major v. State,* 2004 WY 4, ¶ 17, 83 P.3d 468, 474 (Wyo. 2004)).

[¶49]   The district court noted "Mr. Keller expressed no issue to the [c]ourt with respect to [PD] DeBernardi" when he entered his guilty plea and "[i]n fact . . . indicated he was satisfied" with PD DeBernardi's representation.  Mr. Keller argued at the hearing on his motion to withdraw his plea that PD DeBernardi was "probably just as busy as everybody else in the world and to get these cases resolved, . . . sometimes I think that a lot of corners get cut[.]"  Mr. Keller also said he did not receive all the "paperwork and discovery" and suggested PD DeBernardi did not adequately "inspect" the case prior to negotiating the plea agreement.  In his appellate brief, Mr. Keller expands his complaints about PD DeBernardi, claiming he felt "betrayed" by him because he used "fear" and "intimidation" to convince Mr. Keller to plead guilty by telling him "if you take the deal you get 5 years, if you oppose or become adversar[ial you] will get 20 years."

[¶50]   As with his other claims, Mr. Keller presented only unsworn allegations in support of his assertion that he did not have PD DeBernardi's close assistance when he entered his plea; he did not provide any evidence.  Contrast this case with *Steffey*, where the defendant *testified* at the hearing on the motion to withdraw his guilty plea about his lack of communication with counsel and counsel's failure to investigate a viable defense prior to advising the defendant to plead guilty.  *Id.,* ¶ 36, 449 P.3d at 1109.  Mr. Keller has not shown the district court erred by concluding he had the close assistance of counsel when he entered his guilty plea, which weighed heavily against allowing him to withdraw the plea.

### 3.  Sixth *Frame* Factor – Knowing and Voluntary Plea

[¶51]   The district court found Mr. Keller acted knowingly and voluntarily when he entered his guilty plea.  W.R.Cr.P. 11(b) requires that before accepting a guilty plea, the district court must advise the defendant about the "'nature of the plea, the penalties, including the potential maximum sentence[] associated with the charge he would be pleading to, the rights he would be relinquishing, and the consequences if the court accept[s] the plea.'"  *Delgado,* ¶ 42, 509 P.3d at 926 (quoting *Major,* ¶ 23, 83 P.3d at 479).  Additionally, under W.R.Cr.P. 11(d),

> [t]he court shall not accept a plea of guilty or nolo contendere without first, by addressing the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the state and the defendant or the defendant's attorney.

A plea is voluntary under Rule 11(d) when it is

> entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel [and is not] induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or . . . by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Delgado,* ¶ 42, 509 P.3d at 926 (citing *Dobbins v. State,* 2012 WY 110, ¶ 62, 298 P.3d 807, 824 (Wyo. 2012); *Major,* ¶ 11, 83 P.3d at 472; and *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (1970)) (other citations and quotation marks omitted).

[¶52]   At the change of plea hearing, the district court reviewed with Mr. Keller the charge, the rights he would waive if he pleaded guilty, the terms of the plea agreement, and the potential consequences of his plea.  Mr. Keller confirmed he understood the plea agreement and the consequences of pleading guilty.  He denied anyone threatened him or otherwise improperly induced him to plead guilty and confirmed he was doing so willingly, knowingly, and voluntarily.

[¶53]   Mr. Keller does not claim the court violated Rule 11(b) or (d), and he did not present any evidence showing his statements at the change of plea hearing were untrue or he pleaded guilty based on improper representations made by the court, his counsel, or the prosecutor.  The district court's finding that Mr. Keller acted knowingly and voluntarily when he pleaded guilty is consistent with the evidence and, as the court concluded, weighs heavily against allowing him to withdraw his plea.

[¶54]   Mr. Keller has not convinced us the district court wrongly analyzed the *Frame* factors or otherwise abused its discretion when it concluded he failed to present a fair and just reason to withdraw his guilty plea under W.R.Cr.P. 32(d).  At its heart, Mr. Keller's argument appears to be that his case cannot be properly resolved without a trial.  That is an insufficient basis to withdraw a guilty plea under Rule 32(d).  To establish a fair and just reason, the defendant must provide something "more than the wish to have a trial, or belated misgivings about the plea." *Winsted,* ¶ 16, 241 P.3d at 501-02 (citing *Ortega–Ascanio,* 376 F.3d at 883, and *Jenkins,* 736 N.W.2d at 34).

## CONCLUSION

16

[¶55] The district court properly denied Mr. Keller's W.R.A.P. 21 and W.R.Cr.P. 32(d) motions. Affirmed.